1  LAWRENCE J. HILTON (SBN 156524)  JESSICA ROSEN, SBN 294923
   Email: lhilton@onellp.com                       jrosen@lewitthackman.com
2  TAYLOR C. FOSS (SBN 253486)            HEIDY A. NURINDA, SBN 333188
   Email: tfoss@onellp.com                        hnurinda@lewitthackman.com
3  **ONE LLP**                                          **LEWITT, HACKMAN, SHAPIRO,**
4  23 Corporate Plaza, Suite 150-105          **MARSHALL & HARLAN**
   Newport Beach, CA 92660                      16633 Ventura Boulevard, 11th Floor
5  Telephone:   (949) 502-2876               Encino, California 91436-1865
   Facsimile:    (949) 258-5081              Telephone:   (818) 990-2120
6                                                          Fax:            (818) 981-4764
7  Attorneys for Plaintiffs and
   Counter-Defendants                          Attorneys for
8  MEINEKE FRANCHISOR SPV LLC          Defendants/Counterclaimant
   and MEINEKE REALTY, INC.

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

### WESTERN DIVISION

12

| | |
|---|---|
| MEINEKE FRANCHISOR SPV LLC, a Delaware limited liability company; and MEINEKE REALTY, INC., a North Carolina corporation, Plaintiffs, v. CJGL, INC., a California corporation; CARL DOUMA, an individual; JAN DOUMA, an individual, Defendants. | Case No. 2:23-cv-00374-SPG-JC Hon. Sherilyn Peace Garnett **JOINT BRIEF FOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND COUNTERCLAIMANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** Date:   April 10, 2024 Time:  1:30 p.m. Crtrm: 5C Complaint Filed: January 18, 2023 Answer/Counterclaim: March 15, 2023 |
| AND RELATED COUNTERCLAIMS | Trial Date: June 18, 2024 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**                                      <u>Page</u>

I.      INTRODUCTION ........................................................................................1

   A.      Plaintiffs' Introduction...............................................................1

   B.      Counterclaimants' Introduction .................................................2

II.     STATEMENT OF FACTS ........................................................................4

   A.      Plaintiffs' Statement of Facts......................................................4

     1.      The Initial Franchise and Sublease Documents.................4

     2.      Disputes Arise Regarding Non-Renewal of the Master Lease ......5

     3.      Disputes Arise Regarding Repairs at the Franchise Premises ......5

     4.      Disputes Arise Regarding "Project Constitution" Funds..........6

     5.      The Parties Renew the Franchise Relationship and Execute a Mutual Release of all Prior Claims .......................7

     6.      Following Renewal, Meineke Helps the Doumas Obtain a New Lease Offer from Landlord, but the Doumas Reject the Landlord's Offer.............9

     7.      CJGL Abandons the Franchise Premises in August, 2022 ...........9

   B.      Counterclaimants' Statement of Facts .......................................10

     1.      The 2014 Franchise and Trademark Agreement and 2014 Sublease for the Franchised Premises .......................10

     2.      Meineke's Initial Agreement to Guaranty the Direct Lease ........12

     3.      Meineke's Refusal to Grant a Reasonable Extension for Renewal Pending Completion and Execution of Direct Lease between CJGL and Landlord; Meineke's Renewal of CJGL's Franchise Trademark Agreement in 2021 *without* a Direct Lease ...........13

     4.      Meineke's Renege of Guaranty for Direct Lease between CJGL and Landlord in September 2021; Shortly After, Meineke "Executes" the 2021 Franchise Agreement ..........................14

     5.      Expert Opinions and Conclusions that Meineke's Failure to Exercise its Options to Renew the Master Lease or, Alternatively, Guaranty a New Lease between Landlord and the Franchisee are Inconsistent with Standard Custom and Practice in the Franchise Industry ...........16

III.    SUMMARY JUDGMENT STANDARD ...............................................16

   A.      Plaintiff's Legal Standard .........................................................16

   B.      Counterclaimants' Legal Standard.............................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS <span style="float:right">Page</span>

IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ..............................18

  A.   Plaintiff's Argument 1: ................................................................18

    1.  Summary Judgment Should be Granted on the First Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing..............18

    2.  Counterclaimants' Response: All Counterclaims are Timely—They Did Not Accrue Until Counterclaimants Suffered Actual and Appreciable Harm.........................................................................19

  B.   Plaintiffs' Argument 2: ................................................................20

    1.  Summary Judgment Should be Granted on the Second Counterclaim for Intentional Misrepresentation. .................................................20

    2.  Counterclaimants' Response: ......................................................23

      a.  Summary Judgment for Meineke Must Be Denied—The Renewal Mutual Release is Unconscionable and Not Enforceable ....................23

        i.  Standard of Unconscionability ..............................................23

        ii.  The Release is Oppressive .....................................................24

        iii. The Release, as Meineke Applies It, is a Surprise .................27

        iv. The Release is Substantively Unconscionable .......................28

        v.  The Unconscionable Release Should Be Stricken ................29

      b.  Procedurally, Meineke's Motion for Summary Judgment on any Other Ground than the Release Should Be Denied for Failure to Meet and Confer Over *Additional* Issues for Summary Judgment.........30

      c.  Genuine Disputes of Material Facts Exist for The Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims ................................31

  C.   Plaintiff's Argument 3: ................................................................32

    1.  Summary Judgment Should be Granted on the Third Counterclaim for Negligent Misrepresentation.........................................................32

    2.  Counterclaimants Incorporate All Arguments Presented in Section IV.B.2, *supra.* ..............................................................33

  D.   Plaintiff's Argument 4: ................................................................34

    1.  Summary Judgment Should be Granted on the Fourth Counterclaim for Fraudulent Inducement – 2021 Franchise Agreement. .........................34

    2.  Counterclaimants Response:.........................................................34

## TABLE OF CONTENTS

a. Counterclaimants' Incorporate All Arguments Above in Section IV.B.2, *supra.* ..................................................34

b. Meineke's October 2021 "Offer to Guaranty a New Lease" Does Not Cure or Otherwise Negate Meineke's Fraudulent Inducement of the 2021 Franchise Agreement ..................................................35

E.   Plaintiff's Argument 5: ..................................................35

  1.   Summary Judgment Should be Granted on the Fifth Counterclaim for Rescission and Restitution. ..................................................35

  2.   Counterclaimants' Response: ..................................................37

a. Counterclaimants' Incorporate Applicable Arguments Above, in Section IV.B.2, *supra.* ..................................................37

b. The Fifth Counterclaim for Rescission and Restitution is Timely— Counterclaimants Satisfied Notice Requirements and Undisputed Evidence Establishes Failure of Consideration ..................................................37

F.   Plaintiff's Argument 6: ..................................................39

  1.   Summary Judgment Should be Granted on the Sixth Counterclaim for Violation of California Franchise Investment Law. ..................................................39

  2.   Counterclaimants' Response: ..................................................40

a. Counterclaimants' Incorporate Applicable Arguments Above, under IV.B.2, *supra.* ..................................................40

b. Counterclaimants' Incorporate Their Argument Below, under Section V.A, *infra*, that Meineke Violated California Franchise Investments Laws by Failing to Make Statutory Written Disclosures 41

G.   Plaintiff's Argument 7: ..................................................41

  1.   Summary Judgment Should be Granted on the Seventh Counterclaim for Intentional Interference with Prospective Economic Advantage. ..................................................41

  2.   Counterclaimants Incorporate All Arguments Presented in Section IV.B.2 ..................................................43

H.   Plaintiff's Argument 8: ..................................................43

  1.   Summary Judgment Should be Granted on the Eighth Counterclaim for Negligent Interference with Prospective Economic Advantage. ..................................................43

  2.   Counterclaimants Incorporate All Arguments Presented in Section IV.B.2 ..................................................44

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS                                Page

I.   Plaintiff's Argument 9: ...................................................................44

   1.   Summary Judgment Should be Granted on the Ninth Counterclaim for Unlawful and Fraudulent Business Practices. ............................................44

   2.   Counterclaimants Incorporate All Arguments Presented in Section IV.B.2 ...................................................................................44

V.   COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM FOR VIOLATIONS OF CALIFORNIA FRANCHISE INVESTMENT LAW ...................................................45

  A.   Counterclaimants' Argument: Meineke Violated California Franchise Investment Law by Materially Modifying the Franchise Agreement Without Providing Required Written Disclosures.......................................45

  B.   Plaintiffs' Response ...............................................................47

VI.  CONCLUSION..........................................................................50

  A.   Plaintiff's Motion...................................................................50

   1.   Plaintiff's Conclusion ...........................................................50

   2.   Defendant's Conclusion.........................................................50

  B.   Counterclaimants' Motion .......................................................51

   1.   Defendant's Conclusion.........................................................51

   2.   Plaintiff's Conclusion ...........................................................51

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1

## <u>TABLE OF AUTHORITIES</u>                                   <u>Page(s)</u>

2

### <u>Cases</u>

3

*A&M Prod. v. FMC Corp.*

4

    135 Cal.App.3d 473 (1982) ..............................................................24, 25, 27, 28

5

*Abramson v. Juniper Networks,*

6

    115 Cal.App.4th 638 (2004) ...........................................................................28

7

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (1986)....................................................................................16, 17

8

*Armendariz v. Foundations Health Psychare Servs,*

9

    24 Cal.4th 83 (2000) ...............................................................................23, 24, 29

10

*Bolter v. Superior Court,*

11

    87 Cal.App.4th 900 (2001) ...............................................................................27

12

*Campbell v. Title Guar. & Trust Co.,*

    121 Cal.App. 374 (1932) ...................................................................................36

13

*Carter v. Fox,*

14

    11 Cal.App. 67 (1909) ......................................................................................39

15

*Celotex Corp. v. Catrett,*

16

    477 U.S. 317 (1986)....................................................................................16, 17

17

*Choi v. Sagemark Consulting,*

    18 Cal.App.5th 308 (2017) ...............................................................................19

18

*Christian v. Mattel, Inc.,*

19

    286 F.3d 1118 (9th Cir. 2002) ..........................................................................30

20

*Cislaw v. Southland Corp.,*

21

    4 Cal.App.4th 1284 (1992) ...............................................................................45

22

*Citicorp Real Estate, Inc. v. Smith,*

23

    155 F.3d 1097 (9th Cir. 1998) ..........................................................................38

24

*City of Oakland v. Hassey,*

    163 Cal. App. 4th 1477 (2008) .........................................................................19

25

*Coleman v. Quaker Oats Co.,*

26

    232 F.3d 1271 (9th Cir. 2000) ..........................................................................48

27

*County of Santa Clara v. Atlantic Richfield Co.,*

28

    137 Cal.App.4th 292 (2006) ............................................................................20

- v -

1

## <u>TABLE OF AUTHORITIES</u>                                   Page(s)

2

**<u>Cases</u>**

3

*Cucci v. Edwards*,

4
   510 F.Supp.2d 479 (C.D. Cal. 2007) ......................................................30

5

*Della Penna v. Toyota Motor Sales, U.S.A.*,

6
   11 Cal.4th 376 (1995) ..............................................................................42

7

*Dent v. National Football League*,
   902 F.3d 1109 (9th Cir. 2018) .........................................................32, 33

8

*Doctor v. Lakeridge Constr. Co.*,

9
   252 Cal.App.2d 715 (1967) .....................................................................38

10

*Ellis v. McKinnon Broadcasting Co.*,

11
   18 Cal.App.4th 1796 (1993) ..............................................................27, 28

12

*Fanucchi & Limi Farms v. United Agri Prod.*,
   414 F.3d 1075 (9th Cir. 2005) ................................................................21

13

*Full Tilt Boogie, LLC v. Kep Fortune, LLC*,

14
   No. 2:19-cv-09090-ODW (KESx),

15
   2022 U.S. Dist. LEXIS 135419 (C.D. Cal. July 29, 2022) ....................48

16

*Gatton v. TMobile USA*,
   152 Cal.App.4th 571 (2007) ....................................................................24

17

*Gedstad v. Ellichman*,

18
   124 Cal.App.2d 831 (1954) .....................................................................36

19

*Graham v. Scissor–Tail, Inc.*,

20
   28 Cal.3d 807 (1981) ...................................................................24, 25, 27

21

*Grove v. Wells Fargo Fin. California, Inc.*,

22
   606 F.3d 577 (9th Cir. 2010) ..................................................................30

23

*GWS Techs. Inc. v. Furth*,
   No. 08-cv-00586 CJC (PLAx),

24
   2009 U.S. Dist. LEXIS 135773; 2009 WL 10675903

25
   (C.D. Cal. Dec. 4, 2009) ..........................................................................30

26

*Harm v. Frasher*,
   181 Cal. App. 2d 405 (1960) ..................................................................18

27

*Ingle v. Circuit City Stores*,

28
   328 F.3d 1165 (9th Cir. 2003) ................................................................28

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1

**TABLE OF AUTHORITIES**                                   **Page(s)**

2

**Cases**

3

*Ixchel Pharma, LLC v. Biogen, Inc.*,

4

   9 Cal.5th 1130 (2020) ...................................................................................42

5

*Korea Supply Co. v. Lockheed Martin Corp.*,

   29 Cal.4th 1134 (2003) .................................................................................42

6

*Krantz v. BT Visual Images*, L.L.C.,

7

   89 Cal.App.4th 164 (2001) ...........................................................................44

8

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,

9

   624 F.3d 1083 (9th Cir. 2010) .......................................................................48

10

*Lantzy v. Centex Homes*,

11

   31 Cal.4th 363 (2003) ...................................................................................20

12

*Lazar v. Superior Court*,

   12 Cal.4th 631 (1996) ...................................................................................21

13

*Lennar Homes of California, Inc. v. Stephens*,

14

   232 Cal.App.4th 673 (2014) .........................................................................29

15

*Leonard v. John Crane, Inc.*,

16

   206 Cal.App.4th 1274 (2012) .......................................................................19

17

*Lhotka v Geographic Expeditions*,

   181 Cal.App.4th 816 (2010) .........................................................................28

18

*Long Beach Unified Sch. Dist. v. Margaret Williams, LLC*,

19

   43 Cal.App.5th 87 (2019) ........................................................................28, 29

20

*Luna Records Corp., Inc., v. Alvarado*,

21

   232 Cal.App.3d 1023 (1991) .........................................................................19

22

*Majano v. Specialized Loan Servicing, LLC*,

   No. 2:22-cv-07156-ODW (SKx),

23

   2023 U.S. Dist. LEXIS 64615 (C.D. Cal. Apr. 12, 2023) ....................................44

24

*Manderville v. PCG&S Group, Inc.*,

25

   146 Cal.App.4th 1486 (2007) .......................................................................46

26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

27

   475 U.S. 574 (1986).....................................................................................17

28

*Mercuro v. Superior Court*,

   96 Cal.App.4th 167 (2002) ...........................................................................23

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1

## TABLE OF AUTHORITIES

**Page(s)**

2

### Cases

3

*Nagrampa v. Mailcoups*,
   469 F.3d at 1257 (2006) ......................................................26

4

5

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
   682 F.3d 1144 (9th Cir. 2012) .............................................16

6

7

*Neet v. Holmes*,
   25 Cal.2d 447 (1944) ......................................................36, 37

8

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) .............................................17

9

10

*Oyarzo v. Turner*,
   641 Fed. App'x 700 (9th Cir. 2015) ....................................48

11

*Pasadena Live v. City of Pasadena*,
   114 Cal. App. 4th 1089 (2004) ............................................18

12

13

*People ex rel. Dep't of Corps. v. Speedee Oil Change Sys.*,
   95 Cal.App.4th 709 (2002) ..................................................48

14

15

*Powell v. Coffee Beanery, Ltd.*,
   932 F. Supp. 985 (E.D. Mich. 1996)....................................48

16

17

*Professional Programs Group v. Dep't. of Commerce*,
   29 F.3d 1349 (9th Cir. 1994) ...............................................30

18

*Redfearn v. Trader Joe's Co.*,
   20 Cal.App.5th 989 (2018) ..................................................43

19

20

*Sanchez v. Valencia Holding Co.*,
   61 Cal.4th 899 (2015) ........................................................23

21

22

*Scott v. Harris*,
   550 U.S. 372 (2007).............................................................16

23

24

*Shamsian v. Atlantic Richfield Co.*,
   107 Cal.App.4th 967 (2003) ................................................32

25

26

*Siegel v. Anderson Homes, Inc.*,
   118 Cal.App.4th 994 (2004) ................................................20

27

28

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
   771 F. App'x 732 (9th Cir. 2019) (unpublished)..................38

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Sonic-Calabasas A, Inc. v. Moreno,*
  57 Cal.4th 1109 (2013) ........................................................................23

*Stirlen v. Supercuts, Inc.,*
  51 Cal.App.4th 1519 (1997) ...........................................................24, 25

*Superbalife, Int'l v. Powerpay,*
  No. 08-cv-5099, 2008 U.S. Dist. LEXIS 89204; 2008 WL 4559752 (C.D. Cal.
  Oct. 7, 2008) ......................................................................................31

*Taliaferro v. Davis,*
  216 Cal.App.2d 398 (1963) ................................................................39

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
  2 Cal.App.4th 153 (1991) .............................................................21, 33

*Thomas v. Thomas,*
  No. 16-cv-1446-JLS-DFMx 2016 U.S. Dist. LEXIS 195290; 2016 WL 10771296
  (Cal. C.D. December 12, 2016) ..........................................................31

*Uniloc 2017 LLC v. Apple, Inc.,*
  964 F.3d 1351 (Fed. Cir. 2020)...........................................................30

*United Studios of Self Def., Inc. v. Rinehart,*
  No. 8:18-cv-01048-DOC (DFMx), 2019 U.S. Dist. LEXIS 37993, 2019 WL
  1109682 (C.D. Cal. Feb. 22, 2019) ....................................................48

*Vaca v. Wachovia Mortgage Corp.,*
  198 Cal. App. 4th 737 (2011) ............................................................20

**Statutes**

Cal. Civ. Code § 1668 ...........................................................................46

Cal. Civ. Code § 1689 ...........................................................................38

Cal. Civ. Code § 1691 .....................................................................36, 38

Cal. Civ. Code §1670.5 .........................................................................23

Cal. Code Civ. Proc. § 337 ....................................................................18

Cal. Com. Code § 1201 .........................................................................27

Cal. Corp. Code § 31000 .......................................................................45

1

**<u>TABLE OF AUTHORITIES</u>** **<u>Page(s)</u>**

2

**<u>Statutes</u>**

3

Cal. Corp. Code § 31001 ............................................................45

4

Cal. Corp. Code § 31018 ..........................................................4, 46

5

Cal. Corp. Code § 31101 .........................................................46, 47

6

Cal. Corp. Code § 31110 .........................................................45, 47

7

Cal. Corp. Code § 31114 ............................................................45

8

Cal. Corp. Code § 31119 .........................................................45, 47

9

Cal. Corp. Code § 31125 .......................................................4, 45, 46

10

Cal. Corp. Code § 31200 .........................................................4, 40

11

Cal. Corp. Code § 31201 .........................................................passim

12

Cal. Corp. Code § 31301 .........................................................47, 49

13

Cal. Corp. Code § 31303 .....................................................47, 48, 49

14

Cal. Corp. Code § 31512.1 ..........................................................29

15

**<u>Rules</u>**

16

Fed. R. Civ. P. 56 ...............................................................16, 17

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

## I. **INTRODUCTION**

### A. **Plaintiffs' Introduction**

Plaintiff Meineke Franchisor SPV, LLC ("Franchisor") is a franchisor of automotive repair centers that operate under the Meineke® brand and system. Defendant CJGL, Inc. ("CJGL") was a Meineke franchisee from 2014 to 2022. Franchisor's affiliate, Meineke Realty, Inc. ("Realty," and collectively with Franchisor "Meineke") is a lessee of certain properties which it subleases to Meineke franchisees. Realty subleased a property in Santa Barbara, California to CJGL, from which CJGL operated the Meineke Center that is the subject of this action. Defendants Jan Douma and Carl Douma are the owners of CJGL, and they personally guaranteed CJGL's obligations under the franchise and sublease documents.

In 2014, CJGL entered into a Meineke Franchise Agreement and a Sublease for the Santa Barbara Meineke Center, which ran through June, 2021. During that term, a number of disputes arose between Meineke and the Doumas (both of whom are licensed California attorneys.) First, the Doumas claimed that Meineke was responsible for making repairs at the premises and that Meineke failed to make those repairs. Second, the Doumas took issue with Realty's decision in 2016 not to renew its master lease for the Santa Barbara location. The Doumas also claimed that they were entitled to receive funds from a Meineke program known as "Project Constitution" and that the funds were wrongfully withheld.

Despite the rocky relationship, the Doumas indicated that they wanted to renew the Franchise Agreement in 2021. The Doumas engaged outside counsel to negotiate their renewal demands, including that Meineke ensure that they would have a direct lease with the landlord (since Realty did not renew its lease) and that Meineke provide a lease guaranty to the landlord. The Doumas also demanded that Meineke make the disputed repairs at the franchise premises. However, Meineke expressly rejected the Doumas' demands, and told the Doumas that it would not renew the franchise relationship unless the Doumas and CJGL signed a release of all claims. On September

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1  29, 2021, the Doumas and CJGL agreed and entered into a "Renewal Mutual Release"
2  and a new Meineke Franchise Agreement. And although Meineke assisted the
3  Doumas in their efforts to get a direct lease with the landlord—even offering a lease
4  guaranty—the Doumas rejected the landlord's lease proposal. In August, 2022, CJGL
5  and the Doumas shuttered the business and vacated the premises. The Doumas left the
6  premises with serious hazardous materials violations requiring substantial
7  remediation, which the landlord performed and then passed the costs on to Meineke.

8  Meineke filed this action to recover those costs and other balances that were
9  outstanding when the business closed, and CJGL and the Doumas filed their
10  Counterclaims. As demonstrated below, the Counterclaims are based on longstanding
11  disputes, known to Counterclaimants when they executed the Renewal Mutual
12  Release, and are barred by the Release and applicable statutes of limitations. Summary
13  judgment should be entered in favor of Meineke on all of the Counterclaims.

14  **B.    Counterclaimants' Introduction**

15  Plaintiffs and Counterdefendants Meineke Franchisor SPV, LLC
16  ("Franchisor") and Meineke Realty, Inc. ("Realty") (collectively, "Meineke" unless
17  referred to individually) violated the California Franchise Investment Law ("CFIL")
18  and committed other tortious conduct when, in 2021, Meineke induced Defendants
19  and Counterclaimants CJGL, Inc., to renew and Carl and Jan Douma to guaranty the
20  parties' renewal of the Franchise and Trademark Agreement, set to expire on June 29,
21  2021. CJGL had purchased an existing "Meineke Car Care Center" in 2014 and
22  entered into the Franchise and Trademark Agreement to continue operations of the
23  Meineke Car Care Center. Included in the purchase and valuation of the franchise was
24  the 2011 Master Lease for the premises between Realty and the landlord, with an
25  initial term to June 29, 2016 and two options to renew the Master Lease, each for an
26  additional 60-month terms (through June 29, 2026). CJGL and Realty executed a
27  Sublease for the premises, expressly incorporating the Master Lease. Defendants and
28  Counterclaimants Carl and Jan Douma were required to and executed personal

guarantees for the 2014 Franchise Agreement and Sublease.

Meineke did not timely exercise its first renewal option and allowed the Master Lease to terminate on or around June 2016. Meineke claims to have become a month-to-month tenant for the premises. However, the Master Lease had a no-holdover provision. Meineke agents represented to the Doumas that Meineke would approach the landlord to arrange a direct lease with CJGL. By May 2021, CJGL did not meet express terms for renewal, specifically that CJGL "maintain the right to possession of the [existing Meineke Car Care Center] for the term of the successor franchise agreement." Meineke knew CJGL did not have a commercial lease for the eight-year renewal term to 2029. Meineke also was aware of CJGL's ongoing negotiations with the landlord for a direct lease for the renewal term. Meineke representatives assured CJGL that Meineke "will do [its] best to contact the [Landlord] and see what it will take to get [CJGL/Douma] a master lease to match [Meineke's] 8 year [renewal term] FTA." (JAF ¶¶34, 68.)

Meineke refused to grant a reasonable extension of the existing 2014 Franchise Agreement and insisted that CJGL execute the renewal agreement, which occurred on July 12, 2021. (JAF ¶¶67, 74.) Meineke required CJGL and the Doumas to execute and return a packet of documents that Meineke indicated as required for CJGL to renew the franchise. Since it was critical for CJGL to renew the franchise to avoid losing the business that the Doumas worked so hard to develop, the Doumas complied with Meineke's requirements by signing and returning the stack of renewal documents that Meineke sent. In the renewal packet was a Renewal Mutual Release (the "Release"). Meineke now seeks to use that Release against CJGL and the Doumas, claiming they released all counterclaims at issue by signing the very renewal agreement Meineke induced. Meineke cannot have it both ways. Summary judgment in favor of Meineke must therefore be denied.

CJGL and the Doumas additionally cross-move for summary judgment on their sixth counterclaim against Meineke Franchisor for violation of CFIL. It is a violation

1  "for any person to offer or sell a franchise in this state by means of any written or oral
2  communication not enumerated in Section 31200 which includes an untrue statement
3  of a material fact or omits to state a material fact necessary in order to make the
4  statements made, in the light of the circumstances under which they were made, not
5  misleading." Cal. Corp. Code § 31201. Section 31201 applies here since there was a
6  "material modification" of CJGL's existing franchise at renewal. Cal. Corp. Code §
7  31018(c). Meineke's modification to its renewal terms to allow for renewal *without* a
8  franchisee's "right to possession of the [existing Meineke Car Care Center] for the
9  term of the successor franchise agreement" "substantially and adversely impact[ed]
10  the [CJGL's] rights, benefits, privileges, duties, obligations, or responsibilities under
11  the franchise agreement." Cal. Corp. Code § 31125(d). Summary judgment in favor
12  of Counterclaimants should therefore be granted on the sixth counterclaim with a
13  declaration that the renewal agreement is rescinded.

14  **II.   STATEMENT OF FACTS**

15       **A.   Plaintiffs' Statement of Facts**

16       Franchisor and its affiliates grant franchisees the right to operate Meineke
17  automotive maintenance and repair centers, specializing in exhaust and brake system
18  repairs, and certain other automotive maintenance and repair services. Franchisor is a
19  subsidiary of Driven Brands, Inc. ("Driven Brands"). (JAF ¶1.)  Realty is an affiliate
20  of Franchisor.   Franchisor and Realty are sometimes collectively referred to as
21  "Meineke." (JAF ¶2.)

22       CJGL is a dissolved California corporation owned by Jan and Carl Douma
23  (collectively, "the Doumas"). (JAF ¶3.) The Doumas were the sole shareholders,
24  officers and directors of CJGL. (JAF ¶4.) The Doumas both are licensed California
25  attorneys, currently on inactive status. (JAF ¶5.)

26       **1.   The Initial Franchise and Sublease Documents**

27       In 2014, CJGL purchased an existing Meineke Car Care Center (the "Meineke
28  Center") franchise located at 3956 State Street, Santa Barbara, California 93105 (the

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1  "Franchise Premises"). (JAF ¶7.) On August 29, 2014, GJGL and Franchisor entered
2  into a Meineke Franchise and Trademark Agreement (the "2014 Franchise
3  Agreement") for the operation of Meineke Car Care Center #4118 at the Franchise
4  Premises, (JAF ¶8) and also entered into a Real Property Sublease (the "Sublease")
5  for the Franchise Premises. (JAF ¶9.)

6       The Sublease incorporated by reference a Lease dated July 1, 2011 between
7  Realty's predecessor, Econo Lube and Tune, Inc. and Maurice and Mary Sourmany,
8  Trustees of the Sourmany 2006 Trust (the "Master Lease"). (JAF ¶10.)  The Sublease
9  provided for termination upon the earlier of (i) expiration on June 29, 2021, or (ii)
10 termination or expiration of the Master Lease. (JAF ¶11.) The Original Term of the
11 Master Lease expired on June 30, 2016, subject to options to extend the lease term for
12 two additional 60-month terms. (JAF ¶12.)

13          **2.      Disputes Arise Regarding Non-Renewal of the Master Lease**

14      When the Original Term of the Master Lease expired on June 30, 2016, Realty
15 elected not to exercise its option to extend. (JAF ¶13.) The Master Lease was not
16 terminated, however, and continued month-to-month. *See* Cal. Civ. Code § 1945.

17      The Doumas claim that they were not immediately notified of the non-renewal
18 of the Master Lease, but they knew by at least January 18, 2018 that Realty had not
19 exercised its option to renew the Master Lease. (JAF ¶14.) On September 14, 2018,
20 Jan Douma wrote to Meineke's counsel that Meineke was in breach of the Sublease:
21 "We consider Driven Brands to currently be in breach of their obligations under the
22 sublease, as they have no ability to fulfill the terms of the sublease." (JAF ¶15.)

23          **3.      Disputes Arise Regarding Repairs at the Franchise Premises**

24      Related to the lease renewal dispute was a dispute over repairs at the Franchise
25 Premises. Under the Sublease, CJGL was responsible for repairs but the Doumas
26 repeatedly claimed that Realty was responsible for the repairs. In the same email that
27 Jan Douma asserted that Realty's non-renewal of the Master Lease was a breach of
28 the Sublease, she also asserted that: "We are also at risk of expulsion from the property

1   if Driven Brands does not fulfill its obligations under the lease, which to date it has
2   not done, because the identified repairs were never performed when the lease was
3   renewed in 2011." (JAF ¶16.)

4       The dispute over repairs at the premises carried over into 2021. On April 29,
5   2021, Jan Douma sent an email to Joe Robinson reiterating her position that Meineke
6   was responsible for repairs at the Franchise Premises, stating: "Meineke needs to
7   finish all repairs as required by the 2011-2016 lease with the landowners, the
8   Sourmanys." (JAF ¶17.) In their Counterclaim, CJGL and the Doumas acknowledge
9   that they were aware of the dispute over repairs before they entered into the Renewal
10  Mutual Release (the "Release") on September 29, 2021. (JAF ¶18.)

11          **4.     Disputes Arise Regarding "Project Constitution" Funds**

12      During CJGL's tenure as a Meineke franchisee, Franchisor offered a program
13  known as "Project Constitution," which allowed qualified franchisees to use certain
14  advertising funds "to enhance the Meineke image" at their Meineke Centers. The
15  Project Constitution program was set forth in an Advertising Addendum to Franchise
16  and Trademark Agreement entered into by Meineke and CJGL on January 20, 2016.
17  (JAF ¶19.) In order to be qualified, Franchisees had to be current on all obligations
18  under the Franchise Agreement. (JAF ¶20.)

19      Participation in Project Constitution did not require franchisees to pay any
20  additional fees, as the funds were allocated from the existing fees franchisees already
21  were required to pay to the Meineke Advertising Fund ("MAF") pursuant to their
22  franchise agreements. (JAF ¶21.)  Use of Project Constitution funds was limited
23  "solely to improve the image of your Center including replacing and/or upgrading
24  exterior and interior signs and décor." (JAF ¶22.)

25      On February 5, 2020, Meineke notified Jan Douma about available Project
26  Constitution funds and the procedures for disbursing those funds, i.e., that CJGL "will
27  need to submit a Project Constitution proposal to use the funds." (JAF ¶23.) Also on
28  February 5, 2020, Jan Douma responded to Meineke's email and stated that CJGL had

not applied for disbursement of Project Constitution funds "because Meineke has been making repairs required by the land owner. It didn't make sense to plan anything until this was done and signed off." (JAF ¶24.) On February 28, 2020, Meineke notified CJGL that it was "NOT QUALIFIED" to receive Project Constitution funds (JAF ¶25), and Carl Douma disputed that position. (JAF ¶26.)

On September 30, 2020, Darrin Krader notified Jan Douma that he would try to get CJGL re-qualified for Project Constitution because CJGL had a payment plan in place to cure its fee defaults. (JAF ¶27.) CJGL was thereafter restored to "Qualified" status for Project Constitution funds. (JAF ¶28.) However, CJGL never submitted a Project Constitution proposal or otherwise followed the procedures for claiming any Project Constitution funds. (JAF ¶29.) The reason, according to Jan Douma's April 17, 2021 email, was that CJGL and the Doumas were waiting for Meineke to make the disputed repairs at the Franchise Premises before they would initiate the process of claiming Project Constitution funds. (JAF ¶30.)  The Project Constitution issue was indisputably unresolved at the time of the Renewal Mutual Release, as evidenced by Paragraph 31 of the Counterclaims.

### 5. The Parties Renew the Franchise Relationship and Execute a Mutual Release of all Prior Claims

Despite the existence of disputes between the Parties, by mid-2021, they were engaged in discussions about renewing the franchise relationship. On May 11, 2021, Meineke's representative, Joe Robinson, offered to assist the Doumas in efforts to obtain a direct lease with the Landlord, writing to Jan Douma that "I will do my best to contact the LL [Landlord] and see what it will take to get you a master lease to match our 8 year FTA." (JAF ¶32.) And Jan Douma conceded in her deposition that Meineke representatives, including Mr. Robinson, did in fact assist her and CJGL in their efforts to obtain a new lease with the Landlord. (JAF ¶33.)

As the negotiations progressed, CJGL and the Doumas engaged outside counsel, Jeffrey Haff, a partner in the law firm of Dady & Gardner, P.A. to represent

them in the renewal negotiations. (JAF ¶34.) On September 21, 2021, Meineke's outside counsel, Dennis Leone, informed Mr. Haff that Meineke would not be making repairs at the Franchise Premises, but would insist that the Doumas make the repairs. Mr. Leone stated:

> [I]t turns out that your client is also responsible for making repairs to the property and is refusing to do so. Further, your client is arguing that Meineke is responsible for them. As a result, **Meineke will require those repairs [be] made**, as will the landlord. . . . Meineke will support your clients efforts, however, I think your client needs to "right the wrongs" and pay all outstanding amounts and make all repairs as soon as possible. (JAF ¶35) (emphasis added).

On September 24, 2021, Mr. Haff wrote to Mr. Leone asking about a lease guaranty: "Will Meineke agree to guaranty this lease as part of keeping this franchisee in business in Santa Barbara at her current location? I need to know that before I can make a formal proposal to Drew Simons on Ms. Douma's behalf." (JAF ¶36.) Mr. Leone responded the same day that: "Meineke is exiting the business of guaranteeing its franchisees' leases and is no longer agreeing to provide guarantees . . . ." (JAF ¶37.)

As of September 29, 2021, the date that CJGL and the Doumas entered into the Renewal Mutual Release, they clearly understood that Meineke had not promised to provide a lease guaranty, and Mr. Haff said exactly that in an email to the Landlord's attorney, Drew Simons: "Jan Douma and her company propose that her company remain as the tenant at this property and sign a 7-year lease. . . . She would guaranty the lease. *We have asked Meineke to guaranty the lease, but we have not yet heard back on whether they are willing to do so*. (JAF ¶38) (emphasis added).

On September 29, 2021, CJGL and Franchisor entered into a new Meineke Franchisor SPV LLC Franchise and Trademark Agreement (the "2021 Franchise Agreement"). (JAF ¶39.) Concurrently with execution of the 2021 Franchise Agreement, CJGL and the Doumas also entered into the Release with Franchisor.

1  (JAF ¶40.) The Release provides, in pertinent part:

2       **Franchisee** [CJGL], its heirs, executors, administrators, successors and

3       assigns, **hereby releases Meineke**, and its past and present, direct or

4       indirect, parents, subsidiaries, members, affiliates, officers, directors,

5       managers, current and former employees, agents, representatives,

6       successors and assigns **of and from any and all** rights, duties,

7       responsibilities, **claims or causes of action whatsoever** . . . arising from,

8       or in any manner growing out of or resulting from the franchise

9       relationship and the Agreement governing that relationship. (JAF ¶41)

10       (emphasis added).

11
12        **6.    Following Renewal, Meineke Helps the Doumas Obtain a New Lease Offer from Landlord, but the Doumas Reject the Landlord's Offer**

13       In order to assist the Doumas in their efforts to obtain a new direct lease with

14  the Master Landlord after renewal of the franchise relationship, Meineke did, in fact,

15  offer to provide a 3-month lease guaranty. That was confirmed on October 29, 2021

16  in Mr. Haff's email to Landlord's counsel, Mr. Simons, which included CJGL's and

17  the Doumas' proposal for a new lease at the Franchise Premises. (JAF ¶42.)

18       On November 5, 2021, the Landlord, through counsel, rejected the Doumas

19  October 29, 2021 lease proposal and made a counterproposal. (JAF ¶43.) On

20  December 7, 2021, the Doumas, through their counsel Mr. Haff, rejected the

21  Landlord's November 5, 2021 lease counterproposal and made another

22  counterproposal for a 10-year lease. (JAF ¶44.) While the Doumas and CJGL were

23  negotiating (unsuccessfully) with the Landlord over a new lease for the Franchise

24  Premises, Meineke was assisting them in efforts to find an alternate location in Santa

25  Barbara to relocate the Meineke Center. (JAF ¶45.)

26        **7.    CJGL Abandons the Franchise Premises in August, 2022**

27       On August 6, 2022, without prior notice, CJGL ceased operating the Meineke

28  Center and subsequently vacated the Franchise Premises. (CJGL Response to RFA

No. 5). (JAF ¶46.) The Sublease required CJGL, upon termination or expiration of the Sublease, to "surrender the Subleased Premises to the Sublessor in good condition, broom clean, ordinary wear and tear excepted." (JAF ¶47.) In violation of the terms of the Sublease, the condition of the Franchise Premises when CJGL vacated was very poor, and CJGL's shuttering of the business triggered an inspection by the Certified Unified Program Agency ("CUPA"), the agency charged with the local regulatory enforcement of California Health and Safety Code, chapter 6.5 and regulations codified in California Code of Regulations, Title 22. (JAF ¶¶48, 49.)

The inspection revealed numerous violations of storage and handling of hazardous materials at the Franchise Premises, which required removal in accordance with all hazardous waste regulations. (JAF ¶50.) The Landlord remedied the violations identified by CUPA and performed additional environmental testing. The Landlord than passed those expenses on to Meineke, which paid the Landlord the sum of $117,860 to settle disputes over the condition of the Franchise Premises, including $18,600 for Phase I and Phase II environmental studies. (JAF ¶51.)

After CJGL ceased operating the Meineke Center, Jan Douma demanded the Project Constitution funds that CJGL previously had been eligible to receive. (JAF ¶52.) However, by its express terms, Project Constitution funds were available only to franchisees that either were "on a Current Existing Franchise Agreement" or were "actively engaged in the renewal process as determined by Meineke . . . ." (JAF ¶53.) CJGL was not qualified to receive funds when the demand was made, nor would CJGL have been able to use the funds, since they were earmarked solely for improvements to the appearance of the Meineke Center. (JAF ¶54.)

**B.   Counterclaimants' Statement of Facts**

**1.   The 2014 Franchise and Trademark Agreement and 2014 Sublease for the Franchised Premises**

Meineke franchises full-service automotive care centers. In 2014, the Doumas purchased an existing franchise through their company, CJGL, Inc., located at 3956

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1   State Street, Santa Barbara, California, 93105, known as Meineke Center #4118 (the

2   "Franchise Premises"). On or around August 29, 2014, CJGL and Meineke Franchisor

3   entered into a "Meineke Franchise and Trademark Agreement" for the operation of

4   existing Meineke Center #4118 for a term of seven years, with right of renewal by

5   CJGL (the "2014 Franchise Agreement"). (JAF UF¶¶1-8.)

6       Also, on or around August 29, 2014, CJGL, as subtenant, and Meineke Realty,

7   as sublessor, executed a Real Property Sublease (the "Sublease") for the Franchise

8   Premises. The Sublease provided for termination upon the earlier of (i) expiration on

9   June 28, 2021, or (ii) termination or expiration of the Air Commercial Real Estate

10  Association Standard Industrial/Commercial Single-Tenant Lease (the "Master

11  Lease") for the Franchise Premises, between Meineke (formerly Econo Lube), as

12  tenant, and Maurice and Mary Sourmany, Trustees of the Sourmany 2006 Trust (the

13  "Landlord"), as landlord. (JAF UF¶¶9-12.)

14      The Master Lease commenced on or around July 1, 2011, for an initial term of

15  five years, with an "Expiration Date" of June 30, 2016. The Master Lease included

16  the Option(s) to Extend Standard Lease Addendum, which granting options to renew

17  the Master Lease for two additional 60-month terms, provided Meineke exercise the

18  option not less than three months, nor more than six months before the option period

19  would commence. (JAF UF¶¶9-12.)

20      Meineke did not renew the Master Lease prior to the expiration date of June 30,

21  2016. (JAF UF¶13.) Meineke's Rule 30(b)(6) witness testified that Meineke's plan

22  was to "always get out of [master] leases" since Meineke's "business model never

23  included [master] leases." Meineke "inherited all of these leases," including the

24  Master Lease for the Franchise Premises, when Meineke's parent company Driven

25  Brands purchased Econo Lube in 2006—five years *before* execution of the Master

26  Lease. (JAF ¶56.)

27      Meineke has a policy to provide franchisees under subleases at least "a one-

28  year notice" of Meineke's intent not to renew a master lease. Yet Meineke did not

- 11 -

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

notify CJGL or the Doumas that Meineke would not exercise its first renewal option. The Doumas learned of the non-renewal *after* the Master Lease expired. From 2018 up to the expiration date of the 2014 Franchise Agreement in June 2021, CJGL continually identified to Meineke its concerns about Meineke's failure to renew the Master Lease and present risk of termination of possession at any time by the landlord. Meineke agents consistently represented to the Doumas that Meineke would approach the landlord to arrange a direct lease with CJGL for the Franchise Premises. CJGL repeatedly asked Meineke for status of transferring the lease to CJGL. (JAF GF¶¶57-61.)

### 2.    Meineke's Initial Agreement to Guaranty the Direct Lease

In early May 2021, prior to renewal, Meineke ensured CJGL and the Doumas that they would obtain a direct lease for the Franchise Premises and that Meineke would sign a guaranty if needed. Meineke's Renewal Manager, Joseph Robinson, confirmed this in his e-mail to Mrs. Douma on May 8, 2021:

> Thank you for taking my call today. As I mentioned, <u>I will do my best to contact the LL and see what it will take to get you a master lease to match our 8 year FTA [Franchise and Trademark Agreement]</u>.

(JAF ¶¶[ 62-63) emphasis added). On May 13, 2021, Mr. Robinson confirmed he had reached out to the landlord to further discuss "get[ting] [CJGL] a master lease." Based on these representations, CJGL did not at that time pursue possible legal claims against Meineke and instead made reasonable efforts to enter into a new lease agreement directly with the landlord. (JAF ¶¶64.)

On or around June 7, 2021, the landlord informed Mrs. Douma that Meineke agreed to guaranty the lease. At this time, the landlord stated its willingness "to lease to [CJGL] directly as Meineke corporate has agreed to guarantee the lease," and the landlord's intent "to offer her an 8 year lease at current market value which [the landlord was] in the process of determining." (JAF ¶65.)

That same day (June 7th) the landlord informed Meineke, through Renewal

Manager Mr. Robinson, that "a condition to entering into the new lease" requires Meineke "address the remaining deferred maintenance issues from the list prepared by the inspector some 18 months ago." The following day Mr. Robinson responded to the landlord's June 7, 2021 e-mail asking for that list, nothing more. In that e-mail, Meineke did not deny or otherwise correct the landlord's understanding that Meineke agreed to guaranty the lease. (JAF ¶¶66-67.) Mr. Robinson's silence to the landlord's written communication confirming Meineke's agreement to guaranty the lease is an adoptive admission.

### 3. Meineke's Refusal to Grant a Reasonable Extension for Renewal Pending Completion and Execution of Direct Lease between CJGL and Landlord; Meineke's Renewal of CJGL's Franchise Trademark Agreement in 2021 *without* a Direct Lease

On June 25, 2021 (Friday), CJGL's representative Mrs. Douma asked Mr. Robinson that Meineke grant a reasonable extension of the 2014 Franchise Agreement while the Doumas and the landlord completed negotiations of and finalized the direct lease. Meineke would not grant the extension. Instead, the following Monday, June 28, 2021, Mr. Robinson stated Meineke does not grant 30-day extensions for renewals. (JAF ¶67.) In the same correspondence, Mr. Robinson congratulated CJGL on receiving final approval for renewal and asked for the status of the lease negotiations. Mrs. Douma responded:

> They [the landlord] won't sign the lease unless you [Meineke] guarantee it. What happens if I sign the franchise agreement and Meineke decides not to guarantee the lease? In 2014, I was supposed to have a five-year lease with two five-year options, and I only had a lease until 2016.

Mr. Robinson did not answer the question. He simply stated, "Your renewal was approved last Friday, and will be sent to you sometime this week. I understand why you want both the lease and FTA coinciding with each other, one down, one to go." (JAF ¶¶67-69.)

On June 30, 2021, the landlord sent by e-mail the proposed direct lease and

addendum for the Franchise Premises to Mrs. Douma (for CJGL) and the guaranty of lease to Mr. Robinson (for Meineke). CJGL negotiated the lease to $7,900 rent per month for eight years—substantially less than the $10,300 per month that CJGL had been paying to Meineke under the Sublease. CJGL waited for the finalized lease for execution. Meineke did not respond to the landlord's e-mail denying or otherwise correcting the landlord's continued understanding that Meineke agreed to guaranty the lease. (JAF ¶¶70-72.)    Mr. Robinson's silence to the landlord's written communication confirming Meineke's agreement to guaranty the lease is an adoptive admission.

On July 12, 2021, the landlord again sent the guaranty to Meineke, stating "Jan [Douma] is ready to execute the new lease. Is Meineke ready to execute the guaranty and move this process forward? Please advise." (JAF ¶79.)   On that same day, CJGL executed the renewal agreement to operate the Meineke Car Care Center for an additional eight years, to 2029 (the "2021 Franchise Agreement"), with the understanding that Meineke would execute the guaranty once Mrs. Douma, as authorized agent, signed the renewal agreement and accompanying papers, including the General Release at issue in Meineke's motion for summary judgment. (JAF ¶¶74-78.)

### 4.   Meineke's Renege of Guaranty for Direct Lease between CJGL and Landlord in September 2021; Shortly After, Meineke "Executes" the 2021 Franchise Agreement

Months later in late September 2021, Meineke had failed to make the requisite repairs under the Master Lease, including those repairs identified by the landlord as a condition for the landlord to enter into a direct lease with CJGL, and refused to guaranty the lease. (JAF ¶¶78-81.) At the same time, CJGL's principals were told that Carl Douma needed to sign the 2021 Franchise Agreement. Fearful that Meineke would claim CJGL was not operating pursuant to a franchise agreement and to further negotiations for the direct lease with the landlord, Carl Douma signed the same renewal documents Mrs. Douma signed months earlier on July 12, 2021, which

1    Meineke indicated as still needed for the renewal of the franchise. (JAF ¶¶82-83.)

2    As of the purported "effective date" of September 29, 2021, despite having its

3    own corporate counsel involved in the drafting of the Release, Meineke did not send

4    the renewal agreement and accompanying Release to the Doumas' then counsel, even

5    though Meineke knew the Doumas were represented by counsel over continuing

6    issues with the Franchise Premises under Meineke's Master Lease with the landlord.[1]

7    (JAF ¶86.) Neither Meineke nor its corporate counsel advised the Doumas that signing

8    the Release would jeopardize the on-going disputes among the parties now subject to

9    this litigation. (JAF ¶¶84-87.) Meineke also did not make requisite disclosures to the

10   Doumas as required under CFIL when Meineke materially modified the 2021

11   Franchise Agreement by ignoring the renewal term that CJGL "maintain the right to

12   possession of the [existing Meineke Car Care Center] for the term of the successor

13   franchise agreement." (JAF ¶¶94-97.)

14   By October and November 2021, the landlord withdrew the proposed direct

15   lease and terms negotiated by Mrs. Douma. The landlord informed the Doumas that

16   the landlord would not enter into a direct lease until repairs for the deferred

17   maintenance was completed. The landlord also demanded a higher monthly rental rate

18   than originally negotiated and shortened the term to three years (from the original

19   eight years in line with the renewal term of the franchise). (JAF ¶¶88-89.)

20   Once the landlord began advertising the Franchise Premises for lease, including

21   placing a large sign on the property, the Doumas could no longer sustain operations.

22   Given the inability to secure a lease for the Premises, the Doumas had no other option

23   but to shut down operations and vacate the premises in early August 2022. Meineke

24   subsequently terminated the 2021 Franchise Agreement and demanded monies

25   deposited to and held by Meineke for repairs. (JAF ¶90.)

26

27

28

---

[1] Meineke asserts without evidentiary basis that CJGL and the Doumas engaged Jeffrey Haff of Dady & Gardner, P.A. to represent them in "the renewal negotiations."

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

**5.  Expert Opinions and Conclusions that Meineke's Failure to Exercise its Options to Renew the Master Lease or, Alternatively, Guaranty a New Lease between Landlord and the Franchisee are Inconsistent with Standard Custom and Practice in the Franchise Industry**

David Holmes is a domestic and international franchising practices expert. Mr. Holmes has served as in house counsel for renowned franchises, such as Century 21 Real Estate Corporation and International House of Pancakes. Mr. Holmes went on to open his own private practice specializing exclusively in franchising law. In his expert opinion, Mr. Holmes states that it is standard practice in franchising that the franchisor assist a franchisee to remain open for business, including (as one alternative) securing a direct lease for the franchised premises. It is also standard custom and practice in the franchise industry to keep a franchisee informed on matters related to the master lease and sublease for the franchise premises, including communications between the franchisor and the landlord. Mr. Holmes is of the opinion that Meineke's performance was not consistent with franchise industry standards and fell below standard practice. (JAF ¶¶91-93.)

## III.  SUMMARY JUDGMENT STANDARD

### A.  Plaintiff's Legal Standard

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

- 16 -

1  To meet its burden, "[t]he moving party may produce evidence negating an
2  essential element of the nonmoving party's case [or] the moving party may show that
3  the nonmoving party does not have enough evidence of an essential element of its
4  claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire &*
5  *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving
6  party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or
7  argue generic disagreement or "metaphysical doubt" about a material issue of fact.
8  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead,
9  "the nonmoving party must come forward with 'specific facts showing that there is a
10 genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

11      **B.    Counterclaimants' Legal Standard**

12      Summary judgment is proper only if the movant shows that there is no genuine
13 dispute as to any material fact and the movant is entitled to judgment as a matter of
14 law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A
15 fact is material when, under the governing substantive law, the fact could affect the
16 outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A
17 dispute about a material fact is genuine if "the evidence is such that a reasonable jury
18 could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant
19 is to be believed, and all justifiable inferences are to be drawn in … favor" of the non-
20 moving party. *Anderson*, 477 U.S. at 255; *see also Matsushita Elec.*, 475 U.S. at 587
21 (court must view all inferences drawn from the underlying facts in the light most
22 favorable to the nonmoving party). "Credibility determinations, the weighing of the
23 evidence, and the drawing of legitimate inferences from the facts are jury functions,"
24 and not for the Court at summary judgment. *Anderson*, 477 U.S. at 255. If the moving
25 party meets the initial burden, the non-movant must set forth specific facts showing
26 there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The non-movant need not prove
27 its case or establish a likelihood of success. Only that there exist genuine disputes of
28 material fact.

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1    **IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

2         Counterclaimants will not be able to carry their burden of persuasion on any of

3    the counterclaims because all of the alleged facts they rely on to support the

4    counterclaims were well known when they entered into the Release in September,

5    2021. Indeed, the very purpose of the Release was to ensure that the disputes were

6    resolved as a condition to Franchisor entering into the 2021 Franchise Agreement.

7         **A.    Plaintiff's Argument 1:**

8         **1.    Summary Judgment Should be Granted on the First
              Counterclaim for Breach of the Implied Covenant of Good Faith
9             and Fair Dealing.**

10        The First Counterclaim is brought by CJGL for breach of the implied covenant

11   of good faith and fair dealing. (Counterclaim at 8:16-9:24.) The implied covenant of

12   good faith and fair dealing "'imposes upon each contracting party the duty to refrain

13   from doing anything which would render performance of the contract impossible by

14   any act of his own, [and] also the duty to do everything that the contract presupposes

15   that he will do to accomplish its purpose.'" *Pasadena Live v. City of Pasadena*, 114

16   Cal. App. 4th 1089, 1093, 8 Cal. Rptr. 3d 233, 236 (2004) (quoting *Harm v. Frasher*,

17   181 Cal. App. 2d 405, 417 (1960) (emphasis added).

18        The First Counterclaim alleges that Realty breached the covenant of good faith

19   and fair dealing under the Sublease when it did not renew its options under the Master

20   Lease. (Counterclaim ¶40). But CJGL knew by at least January 18, 2018 that Realty

21   had not renewed the Master Lease. (Response to Interrogatory No. 18.) And on

22   September 14, 2018 Jan Douma asserted that Meineke was in breach: "We consider

23   Driven Brands to currently be in breach of their obligations under the sublease, as they

24   have no ability to fulfill the terms of the sublease." (JAF ¶15.) That was three years

25   before CJGL entered into the Release. The First Counterclaim is therefore barred by

26   the release, and Realty is entitled to summary judgment on that claim.

27        Moreover, the applicable statute of limitations is four years. Cal. Code Civ.

28   Proc. § 337. Thus, at the latest, CJGL's claim for breach of the implied covenant

1  would have run on September 14, 2022—four years after Jan Douma expressly alleged
2  a breach of the Sublease. While the filing of a compulsory counterclaim may relate
3  back to the date of the initial complaint, *see Luna Records Corp., Inc., v. Alvarado*,
4  232 Cal.App.3d 1023, 1026 (1991), if the limitations period on the counterclaim has
5  already run as of the date of the complaint, it cannot be resurrected by a counterclaim.
6  *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 1495-96, 78 Cal. Rptr. 3d 621,
7  638 (2008) (citing *Trindade v. Superior Court*, 29 Cal.App.3d 857, 860 (1973)).

8       Here, Meineke's Complaint was filed on January 18, 2023. (ECF No. 1). That
9  was four months to the day after the limitations period ran on the claim asserted in
10  Counterclaimants' First Counterclaim. The claim is therefore barred by the statute of
11  limitations as well as the Renewal Mutual Release. Summary Judgment should be
12  entered in favor of Meineke on the First Counterclaim.

13       **2.**     **Counterclaimants' Response: All Counterclaims are Timely—**
   **They Did Not Accrue Until Counterclaimants Suffered Actual**
14  **and Appreciable Harm**

15       Meineke cannot seriously maintain that CJGL and the Doumas did not timely
16  file their claims over Meineke's failure to exercise its option to renew the Master
17  Lease for a definitive 60-month term and maintain its right to exercise in the future
18  the second option to renew for an additional 60 months. In Meineke's operative
19  complaint, Meineke asserts that the Master Lease turned into a "month-to-month
20  tenancy" allowing Realty to continue its enforcement of the Sublease, which gives to
21  Meineke's claims for reimbursement for repairs to the Franchise Premises.

22       A California state cause of action accrues when the plaintiff suffers <u>actual and
23  appreciable harm</u>. *Choi v. Sagemark Consulting*, 18 Cal.App.5th 308 (2017). That is
24  more than nominal damages. For non-intentional tort claims, actual and appreciable
25  harm is essential. *Leonard v. John Crane, Inc.*, 206 Cal.App.4th 1274 (2012). Thus, a
26  cause of action is complete when all elements are met. Such a claim accrues at the
27  time when the wrongful act is done <u>and</u> the obligation or the liability arises. Put
28  another way, a statute of limitations begins to run when the plaintiff not only <u>discovers</u>

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1  just the wrongful conduct but also the <u>injury</u>. *Siegel v. Anderson Homes, Inc.*, 118
2  Cal.App.4th 994 (2004).

3          Under the discovery rule, the accrual date of a cause of action is delayed until
4  the plaintiff is aware of her injury and its cause. Once the plaintiff has a suspicion of
5  wrongdoing coupled with injury, and therefore an incentive to sue, the plaintiff must
6  then decide whether to file suit or sit on their rights. *County of Santa Clara v. Atlantic*
7  *Richfield Co.*, 137 Cal.App.4th 292 (2006). Here, the injury occurred no earlier than
8  June 2021 at the time of Meineke's representations and inducement of renewal, and
9  CJGL and the Doumas maintain the claims accrued in August 2022, at the time CJGL
10 was forced to cease operations and vacate the Franchise Premises without a direct
11 lease.

12         Even were there some merit to Meineke's position (there is not), Meineke
13 should be equitably estopped from asserting statutes of limitations as a defense
14 because Meineke's conduct induced CJGL and the Doumas to delay filing suit within
15 the limitations period. *Vaca v. Wachovia Mortgage Corp.,* 198 Cal. App. 4th 737
16 (2011).   Further, Meineke continuously represented that Meineke's own
17 representatives would work with the landlord to arrange a direct lease between the
18 landlord and CJGL for the Franchise Premises from 2018 up to, during, and after
19 renewal—into early 2022, leading the Doumas to believe it was unnecessary to sue
20 earlier, if at all. *Lantzy v. Centex Homes*, 31 Cal.4th 363, 383 (2003) ("promises or
21 attempts to repair prevented a timely suit, the defendant may be equitably estopped
22 from invoking the protection of the statute of limitations.").

23         **B.    <u>Plaintiffs' Argument 2:</u>**

24              **1.    Summary Judgment Should be Granted on the Second
                        Counterclaim for Intentional Misrepresentation.**
25

26         The Second Counterclaim is for intentional misrepresentation, which requires
27 admissible evidence of: (1) a misrepresentation by Meineke; (2) made with knowledge
28 of its falsity; (3) made with an intent to defraud, i.e., to induce reliance; (4) justifiable

1  reliance by Counter-defendants; and (5) resulting damage. *See Lazar v. Superior*
2  *Court*, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996). A
3  misrepresentation is generally only actionable if it concerns past or existing material
4  facts. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158, 2 Cal.
5  Rptr. 2d 861 (1991).[2]

6      CJGL does not plead any "past or existing material facts" to support the
7  counterclaim, alleging only that Meineke claimed it "would assist, ensure, and
8  confirm Counterclaimants obtained a lease directly with the Landlord for the renewal
9  period [with] no intention in assisting, ensuring, and confirming Counterclaimants
10 obtained the lease." (Counterclaims ¶48.) Assuming CJGL meant to allege a false
11 promise claim against Meineke, *see Lazar*, 12 Cal. 4th at 638, it must provide
12 affirmative evidence showing an intent not to perform, as "mere nonperformance is
13 not enough to show intent to defraud." *Fanucchi & Limi Farms v. United Agri Prod.*,
14 414 F.3d 1075, 1088 (9th Cir. 2005).

15     It is uncontroverted that prior to entering into the September 29, 2021 Franchise
16 Agreement (JAF ¶39) and the September 29, 2021 Release (JAF ¶40), Meineke's
17 counsel told CJGL's counsel on September 24, 2021 that "Meineke is exiting the
18 business of guaranteeing its franchisees' leases and is no longer agreeing to provide
19 guarantees for them . . . ." (JAF ¶37.) And Mr. Haff confirmed that there was no
20 commitment by Meineke to provide a guaranty when he told the Landlord's counsel
21 on the day the Release was signed (September 29, 2021) that the Doumas "have asked
22 Meineke to guaranty the lease but we have not yet heard back on whether they are
23 willing to do so." (JAF ¶38.)  Further, CJGL's contention that Meineke promised that
24 it would "ensure" or "confirm" that the Landlord actually enter into a lease with it is
25 refuted by the facts. What Meineke actually told Jan Douma was set forth in an email
26

27 ───────────────
   [2] The remaining counterclaims are brought by CJGL and the Doumas.  For the sake
28 of brevity, Meineke will refer to Counterclaimant as "CJGL" in the following
   sections.

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1  sent to her by Joe Robinson on May 11, 2021, wherein Mr. Robinson told Mrs. Douma

2  that "***I will do my best to contact the LL*** [Landlord] and see what it will take to get

3  you a master lease to match our 8 year FTA." (JAF ¶32) (emphasis added.)  CJGL has

4  failed to produce a single document that even suggests Meineke ever made such a

5  promise. Furthermore, the Doumas, as law school graduates and licensed attorneys,

6  would know they could not reasonably rely on such a statement because they knew

7  that Meineke had no authority to compel the Landlord or CJGL to sign a new lease.

8  Meineke does not dispute that it told CJGL and the Doumas that it would assist

9  them in their efforts to obtain a direct lease for the Franchise Premises—and the

10  Doumas admit that Meineke did in fact assist CJGL (JAF ¶33).  In the 30(b)(6)

11  deposition of CJGL, Jan Douma testified that Meineke ***did assist CJGL*** in efforts to

12  obtain a new lease with the Landlord.[3]

13  It is also uncontroverted that Meineke did, in fact, offer to guaranty a new lease

14  with the Landlord, (JAF ¶42), and that CJGL did, in fact, receive an offer from the

15  Landlord for a new lease of the Franchise Premises. (JAF ¶43). And the evidence is

16  uncontroverted that the Doumas rejected the Landlord's offer. (JAF ¶44.) While the

17  Doumas and CJGL were negotiating (unsuccessfully) with the Landlord over a new

18  lease for the Franchise Premises, Meineke was assisting them in efforts to find an

19  alternate location in Santa Barbara to relocate the Meineke Center. (JAF ¶45.)

20  Meineke did not misrepresent its obligations, and it actually did assist CJGL in

21  obtaining a lease offer from the Landlord.  CJGL will therefore be unable to provide

22  evidence to meet its burden on the intentional misrepresentation claim and the Court

23  should grant summary judgment in favor of Meineke on the Second Counterclaim.

24

25  _____

[3] Ms. Douma testified:

26    Q: Did anybody from Meineke assist you in trying to get a new lease with the
  landlord?

  A. Yes.

27    Q. Who was that?

28    A. My liaison was Joseph Robinson, but I understood that other people were also
  talking to the landlord. I don't know who.  (JAF ¶33.)

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

**2.** **Counterclaimants' Response:**

a. Summary Judgment for Meineke Must Be Denied—The Renewal Mutual Release is Unconscionable and Not Enforceable

Meineke's motion for summary judgment relies entirely on the Renewal Mutual Release (the "Release") that Meineke procured from CJGL and the Doumas at the time Meineke induced CJGL and the Doumas to execute the renewal of franchise agreement despite Meineke's express knowledge that CJGL did not meet all material terms for renewal and have a commercial lease providing for the possession of the Franchise Premises for the renewal period of the 2021 Franchise Agreement.

i. Standard of Unconscionability

The California Supreme Court declared "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party, including terms that . . . contravene the public interest or public policy." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013) (citations, internal quote marks omitted). This Court may "refuse to enforce the contract"; "enforce the remainder of the contract without the unconscionable clause"; or "limit the application of any unconscionable clause" to avoid an unconscionable result, if any contract or clause was "unconscionable at the time it was made." Cal. Civ. Code §1670.5(a).

Unconscionability has "a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co.,* 61 Cal.4th 899, 910 (2015). These need not be present equally. The more substantively unconscionable, "the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundations Health Psychare Servs*, 24 Cal.4th 83, 114 (2000); *see also Mercuro v. Superior Court*, 96 Cal.App.4th 167 (2002) (a plaintiff need make only minimal

1   showing of substantive unconscionability where defendant engaged in highly

2   oppressive conduct in securing plaintiff's consent to agreement).

3                    ii.        The Release is Oppressive

4         Oppression exists when a contracting party is "presented the clause and told to

5   'take it or leave it' without opportunity for meaningful negotiation." *Gatton v.*

6   *TMobile USA,* 152 Cal.App.4th 571, 583 (2007). An adhesion provision will be denied

7   enforcement if it is unduly oppressive "even if consistent with the reasonable

8   expectations of the parties." *Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 280 (1981).

9         The 2021 Franchise Agreement and Release has every indicia of adhesion.

10  Meineke was by far the stronger party. Bargaining power was widely unequal. CJGL

11  and the Doumas were concerned they'd lose their franchise business if they did not

12  renew. Meineke was the drafter. The agreement was preprinted, on Meineke

13  letterhead. It was long (78 pages) and printed in small font. The renewal was presented

14  on a take-it-or-leave-it basis. There was no negotiation and no opportunity for

15  negotiated, especially when Meineke plainly refused reasonable extension of the

16  existing 2014 Franchise Agreement pending completion and execution of a new

17  commercial lease for the Franchise Premises. (JAF ¶¶67, 75-77.)

18        Contracts of adhesion support "oppression" or "surprise," or both. *A&M Prod.*

19  *v. FMC Corp.* 135 Cal.App.3d 473, 491 (1982) (finding both surprise and oppression,

20  adding, "Even if we ignore any suggestion of unfair surprise, there is ample evidence

21  of unequal bargaining power here and a lack of any real negotiation over the terms of

22  the contract."). The "subscribing party" could only "adhere to the contract or reject

23  it." *Armendariz*, 24 Cal.4th at 113.

24        Meineke's arguments that the Doumas, "as law school graduates and licensed

25  attorneys" are "experienced" and "sophisticated" is not dispositive. (*See, surpa*, at p.

26  22:10-12.) Procedural unconscionability decisions emphasize difference in bargaining

27  strength between the parties, not sophistication. *See Stirlen*, 51 Cal.App.4th at 1534-

28  1535 (victim being "bright" and "well experienced in machinations of corporate

- 24 -

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1    management" did not preclude unconscionability). The "sophisticated party"
2    argument has been routinely rejected by California courts.

3         For example, *Graham* was an experienced, prominent, "dominant rock music
4    impresario of his generation," (noted in *Stirlen*, 51 Cal.App.4th at 1533. "[W]hatever
5    his asserted prominence ... [he] was required by the realities of his business ... to sign
6    ... form contracts." *Graham*, 28 Cal.3d at 819. Unconscionability relief was granted
7    to a "small but experienced farming company," in *A&M Prod.*, 135 Cal.App.3d at
8    489; to sophisticated, experienced parties, represented by counsel, such as VP/CFO
9    William Stirlin who was "bright and ... well experienced in the machinations of
10   corporate management" in his claim against Supercuts, *Stirlen*, 51 Cal.App.4th at
11   1534.

12        California courts routinely relieve so-called "sophisticated" parties from
13   unconscionable terms. This is because "with increasing frequency," courts "recognize
14   that experienced but legally unsophisticated businessmen may be unfairly surprised
15   by unconscionable contract terms and … even large business entities may have
16   relatively little bargaining power, depending on the identity of the other contracting
17   party and the commercial circumstances surrounding the agreement." *A&M Prod.*,
18   135 Cal.App.3d at 490.

19        Meineke as the franchisor has superior and unequal bargaining power which it
20   exercised when presenting the renewal and Release to the Doumas to sign without any
21   opportunity to negotiate its terms and without any other meaningful choice. Meineke
22   made it clear that if the Doumas desired to renew their franchise and not lose their
23   franchise business, then they had to sign 2021 Franchise Agreement and
24   accompanying Release, as drafted, despite Meineke's knowledge that the Doumas
25   were aggrieved that Meineke did not maintain the Master Lease for the Franchise
26   Premises, repeated statements by Meineke representatives that they would assist and
27   were assisting them in securing a direct lease with the landlord, and that there is no
28   need to extend the existing 2014 Franchise Agreement because CJGL and the Doumas

1  were already approved *without* firm right to possession of the Franchise Premises for

2  the renewal term. (JAF ¶¶73-77, 82-86.)

3      Further, at the purported "effective date" of September 29, 2021, despite having

4  its own corporate counsel involved in the drafting of the Release, Meineke did not

5  send the renewal agreement and accompanying Release to the Doumas' then counsel,

6  even though Meineke knew the Doumas were represented by counsel over the

7  continuing issues with the Franchise Premises under Meineke's Master Lease with the

8  landlord. Most problematic is that neither Meineke nor its corporate counsel advised

9  the Doumas that signing the Release would jeopardize the plain and on-going disputes

10 among the parties now parties to this litigation. Similarly, Meineke did not make

11 requisite disclosures to the Doumas required under the CFIL (discussed below) when

12 Meineke modified the 2021 Franchise Agreement by disregarding the material

13 renewal terms, including that CJGL "maintain the right to possession of the [existing

14 Meineke Car Care Center] for the term of the successor franchise agreement" (JAF

15 ¶¶82-86, 90-93, 94-97.)

16     Meineke presented the Release to the Doumas with the clear indication that if

17 they did not sign the Release, then Meineke would not renew the franchise and they

18 would lose their business they spent years developing. (JAF ¶¶76-77.) Not renewing

19 their franchise would have resulted in the loss of jobs for their employees, their Small

20 Business Administration ("SBA") loan being accelerated, and the Doumas losing their

21 source of income. (JAF ¶¶82-83, 88; Douma Decl. ¶16.) The unfair manner in which

22 the Release was presented to Doumas in June and July 2021 (to Mrs. Douma) and in

23 September 2021 (to Mr. Douma) is a clear pattern of procedural unconscionability.

24     If Meineke tries to claim some negotiated terms, that does not outweigh the

25 indicia of adhesion. The question of negotiation concerns the clause <u>at issue</u>, not the

26 rest of the agreement. *Nagrampa v. Mailcoups*, 469 F.3d at 1257, 1282 (2006).

27 Procedural unconscionability "focuses on the manner in which <u>the disputed clause</u> is

28 presented to the party in the weaker bargaining position." *Id.* (emphasis added); *see*

1   *also Graham*, 28 Cal.3d at 820 (even if <u>other</u> provisions were negotiated, terms of

2   "relatively minor significance" compared "to those imposed by [the stronger party]"

3   do not "remove the taint of adhesion.").

4             iii.        The Release, as Meineke Applies It, is a Surprise

5             Surprise involves the "extent to which the supposedly agreed-upon terms are

6   hidden in a prolix printed form drafted by the party seeking to enforce them, usually

7   the party with the superior bargaining position." *A&M Prod.*, 135 Cal.App.3d at 486-

8   487. Here, the agreement was long, preprinted, and "drafted by the party of superior

9   bargaining strength." *Bolter v. Superior Court*, 87 Cal.App.4th 900, 907 (2001)

10  (holding a term unconscionable). Uncovering a provision of an agreement after

11  execution that severely limits the signer is procedurally unconscionable. *A&M Prod.*,

12  135 Cal.App.3d at 490 (surprise where "terms of the consequential damage exclusion

13  are not particularly apparent, being only slightly larger than most of the other contract

14  text.").

15            Meineke has the burden to show CJGL and the Doumas knew of and

16  appreciated the Release. *See Ellis v. McKinnon Broadcasting Co.*, 18 Cal.App.4th

17  1796 (1993) (surprise procedural unconscionability found, though plaintiff "could

18  have read the contract more closely when it was presented to him for his signature.").

19  The 2021 Franchise Agreement is very long, nearly 80 pages and 100 provisions.

20  Much of it is single spaced. Many provisions are not conspicuous and buried. *See* Cal.

21  Com. Code § 1201(10) ("'Conspicuous,' with reference to a term, means so written,

22  displayed, or presented that a reasonable person against whom it is to operate ought

23  to have noticed it.). The Doumas could not genuinely understand the significance of

24  the Release and what they were waiving concerning disputes and legal action when

25  the parties were engaged in discussions over several disputes <u>before</u>, <u>during</u>, and <u>after</u>,

26  the renewal in July and September 2021.

27            The failure to uncover forfeiture terms "is hardly surprising" where there is "no

28  reason to suspect" a contract contains "a forfeiture term" not previously discussed.

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

*Ellis*, 18 Cal.App.4th 1796. As explained in *A&M Prod.,* "The burden should be on the party submitting [a standard contract] in printed form to show that the other party had knowledge of any unusual or unconscionable terms contained therein." 18 Cal.App.4th at 1804. Meineke cannot show CJGL or the Doumas knew of unusual, unconscionable, inconspicuous terms hidden in the franchise renewal packet.

iv.    <u>The Release is Substantively Unconscionable</u>

"[S]ubstantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Lhotka v Geographic Expeditions,* 181 Cal.App.4th 816, 824 (2010). The "paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks*, 115 Cal.App.4th 638, 657 (2004); *see Pardee Constr. v. Superior Ct*, 100 Cal.App.4th 1081, 1092 (2002) (contract term unconscionable where provisions are for one party's benefit only); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1174 (9th Cir. 2003) (same).

The Release lacks mutuality. Meineke asserts the Release waives any and all claims and disputes as it relates to the Sublease and "disputed repairs" while simultaneously asserting that Meineke is now entitled to reimbursement over those "disputed repairs." This does not require clause-after-clause of heavily imbalanced, burdensome, non-mutual provisions as applied. Meineke was happy to approve the renewal and accept personal guarantees of both Mr. and Mrs. Douma. It is unfair of Meineke to force CJGL and the Doumas to *defend* Meineke's litigation while at the same time asserting claims on the very same disputes. There is no justification that warrants this heavy level of lack of mutuality.

Overall, the Release drafted and as enforced by Meineke "purports to preclude any possibility of [CJGL and the Doumas] obtaining meaningful recovery on a broad category of meritorious claims." *Long Beach Unified Sch. Dist. v. Margaret Williams, LLC*, 43 Cal.App.5th 87, 101-02 (2019). As in *Long Beach Unified*, the Release appears to "require[] [CJGL and the Doumas] to indemnify the [Meineke] for all liability for specified types of damage … as a result of the [Meineke's] conduct." *Id.*

1   "This paradigmatic example of a 'heads I win, tails you lose' proposition embodies a

2   high degree of substantive unconscionability. *Id.* (citing *Lennar Homes of California,*

3   *Inc. v. Stephens*, 232 Cal.App.4th 673, 693 (2014)).

4   While Meineke seems to suggest that the Doumas received consideration from

5   the renewal of their franchise, the renewal of their franchise provides no consideration

6   for the Release as applied by Meineke because Meineke, by statute, cannot condition

7   CJGL and the Doumas franchise renewal on purported release and/or disclaimers of

8   representations made by Meineke or its personnel or agents in the offer and "sale" of

9   a franchise, including representations made at renewal when Meineke failed to

10  properly disclose a material modification in the renewal. *See* Cal. Corp. Code §

11  31512.1.

12  Additionally, in a franchise relationship, it is standard practice in franchising

13  that the franchisor assist a franchisee to remain open for business, including (as one

14  alternative) securing a direct lease for the franchised premises. It is also standard

15  custom and practice in the franchise industry to keep a franchisee informed on matters

16  related to the master lease and sublease for the franchised premises, including

17  communications between the franchisor and the landlord. Meineke's refusal to

18  meaningfully assist CJGL to remain open for business and to keep CJGL informed on

19  all matters relating to the Master Lease and Sublease is inconsistent with franchise

20  industry standards. Meineke's performance fell below standard practice. (JAF ¶¶98-

21  100.) Meineke cannot now hide behind the ill-gotten, unconscionable Release signed

22  at renewal.

23              v.        The Unconscionable Release Should Be Stricken

24  Pursuant to Cal. Civ. Code § 1670.5(a), the Court should strike the entire

25  Release. Here, as in *Armendariz*, the entire provision should be struck since it is

26  "permeated" with unconscionability. 24 Cal.4th at 124-25. The Supreme Court there

27  found that "permeation is indicated by the fact that there is no single [portion of the

28  provision] a court can strike or restrict in order to remove the unconscionable taint

- 29 -

1    from the [general release]." *Id.* Thus, striking the Release in its entirety is appropriate.

2         b.    <u>Procedurally, Meineke's Motion for Summary Judgment on any</u>
3              <u>Other Ground than the Release Should Be Denied for Failure to</u>
              <u>Meet and Confer Over *Additional* Issues for Summary Judgment</u>

4         "Local rules have the 'force of law' and are binding upon the parties and upon

5    the court." *Professional Programs Group v. Dep't. of Commerce*, 29 F.3d 1349, 1353

6    (9th Cir. 1994). Thus, the Court has "considerable latitude in managing the parties'

7    motion practice and enforcing local rules that place parameters on briefing." *Christian*

8    *v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002). It is within the Court's discretion

9    to decline to hear briefing that circumvent the Court's local rules. *Id.* (affirming

10   district court's rejection of appellant's supplemental filings due to appellant's failure

11   to comply with local rules); *see also Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351,

12   1363 (Fed. Cir. 2020) ("A district court does not abuse its discretion simply because

13   it elects to strictly enforce its local procedural rules."). Indeed, only in "rare cases"

14   will the Ninth Circuit "question the exercise of discretion in connection with the

15   application of local rules." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577,

16   583 (9th Cir. 2010) (quotation omitted).

17        Local Rule 7-3 requires a party contemplating the filing of a motion to "first

18   meet and confer with opposing counsel to discuss thoroughly the substance of the

19   contemplated motion and any potential resolution." *Cucci v. Edwards*, 510 F.Supp.2d

20   479, 486 (C.D. Cal. 2007). This Court emphasizes prefiling meet and confer in its

21   Standing Orders. Failure to comply with the meet and confer requirement is sufficient

22   basis alone to warrant denial of a motion. *Id.*; *see GWS Techs. Inc. v. Furth*, No. 08-

23   cv-00586 CJC (PLAx), 2009 U.S. Dist. LEXIS 135773, at *5; 2009 WL 10675903,

24   *1 (C.D. Cal. Dec. 4, 2009) (denying motion for summary judgment, noting while

25   "the Court may exercise its discretion to consider a motion filed in violation of Local

26   Rule 7-3, it refuses to do so here where Defendants have completely failed to comply

27   with the rule and [plaintiff] had no opportunity to discuss the motion before its

28   filing."); *Thomas v. Thomas*, No. 16-cv-1446-JLS-DFMx 2016 U.S. Dist. LEXIS

195290, at *1-2; 2016 WL 10771296, *1 (Cal. C.D. December 12, 2016) [] (striking defendant's motion to dismiss for failure to comply with L.R. 7-3); *Superbalife, Int'l v. Powerpay*, No. 08-cv-5099, 2008 U.S. Dist. LEXIS 89204, at *5, 2008 WL 4559752, *2 (C.D. Cal. Oct. 7, 2008) (denying motion for failure to comply Local Rule 7-3, explaining: "This Court is well-aware that strict deadlines cannot always be adhered to. That is of course why continuances and extensions exist. However, absent any evidence that a party attempted to meet and confer in good faith, this Court is unwilling to excuse noncompliance with the Local Rules.").

Meineke's motion for summary judgment on *other* issues not raised during the parties' meet and confer should be denied for non-compliance with the Local Rules and the Court's Standing Orders. While the parties met and conferred over the parties' respective anticipated cross-motions for summary judgment, Meineke raised only the Release as its grounds for moving for summary judgment on all counterclaims. (Rosen Decl. ¶¶2-3.) Most other issues came as a surprise to Counterclaimants, with the exception that Meineke would move for summary judgment on grounds that statute(s) of limitations bar the counterclaims having been identified after meet and confer but before exchange of the Joint Brief. (Rosen Decl. ¶¶4-5.) Had Meineke complied with L.R. 7-3 and the Court's Standing Orders and met and conferred over *all* claimed issues for summary judgment, the parties could have (and should have) come to resolution on most if not all other legal grounds without need for briefing, as there clearly are genuine issues of material facts in dispute. Meineke's failure to meet and confer on all issues raised is contrary to the purpose behind L.R. 7-3 to "reach a resolution which eliminates the necessity for hearing" and "to further judicial economy and the administration of justice." *Thomas*, 2016 WL 10771296 *1.

c.   <u>Genuine Disputes of Material Facts Exist for The Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims</u>

Meineke concealed from CJGL and the Doumas of Meineke's refusal to and ultimate failure to exercise its options to renew the Master Lease. Meineke

representatives then made affirmative misrepresentations that Meineke would assist and arrange a direct lease with the landlord for the Franchise Premises for renewal of the franchise agreement. Whether Counterclaimants "knew" five days prior to September 29, 2021, that Meineke's promises to guaranty the direct lease were false is not relevant. Meineke induced CJGL to execute renewal of the franchise agreement and enter into the 2021 Franchise Agreement in July 2021, when Meineke refused to grant a reasonable extension of the existing 2014 Franchise Agreement. Meineke compounded the Doumas' mistake, whether intentionally or negligently, by agreeing to guaranty the direct lease in June and July 2021, only to renege months <u>after</u> CJGL executed the renewal.

### C.   **Plaintiff's Argument 3:**

#### 1.   **Summary Judgment Should be Granted on the Third Counterclaim for Negligent Misrepresentation.**

The Third Counterclaim is for negligent misrepresentation. To prevail on that claim, CJGL must provide proof of a "[m]isrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage." *Dent v. National Football League*, 902 F.3d 1109, 1123 (9th Cir. 2018) (quoting *Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 983, 132 Cal. Rptr. 2d 635 (2003)).

The Third Counterclaim fails as a matter of law. CJGL bases its claim on the allegation that "Counter-defendants, made statements that were false representations of a material fact to Counterclaimants . . . that Counter-defendants would assist, ensure, and confirm Counterclaimants obtained a lease directly with the Landlord for the renewal period, when Counter-defendants had no intention of doing the repairs that the Landlord required for Counterclaimants to obtain the lease." (Counterclaims ¶56.) As stated above, Meineke disputes that it ever told the Doumas that it could

1    "ensure" or "confirm" that the Landlord would actually enter into a lease with CJGL.

2    CJGL has not produced a single document suggesting Meineke ever made such a

3    promises; the documents show just the opposite. (JAF ¶32.)

4        But assuming arguendo that Meineke actually made the representations, they

5    do not concern "a past or existing material fact" as required in order to prove negligent

6    misrepresentation. *See Dent*, 902 F.3d at 1123. Rather, the Counterclaim alleges

7    nothing more than a promise to do some future acts, i.e., to "ensure" or "confirm" that

8    CJGL obtained a future lease. As a matter of law, a promise to perform in the future

9    made negligently is not a viable claim. *Tarmann*, 2 Cal. App. 4th at 159, 2 Cal. Rptr.

10   2d at 863-64 ("The specific intent requirement precludes pleading a false promise

11   claim as a negligent misrepresentation . . . ."). "Simply put, making a promise with an

12   honest but unreasonable intent to perform is wholly different from making one with

13   no intent to perform and, therefore, does not constitute a false promise. Moreover, we

14   decline to establish a new type of actionable deceit: the negligent false promise." *Id.*

15       Finally, even if Counterclaimants' improper "shotgun" pleading (which

16   purports to incorporate all prior allegations into every counterclaim) could be read to

17   include representations on the other issues alleged, i.e., repairs at the premises,

18   providing a personal guaranty and Project Constitution funds, the Counterclaim would

19   be barred by the Renewal Mutual Release. It is uncontroverted that more than a week

20   before CJGL and the Doumas entered into the Release, Meineke's counsel told their

21   counsel, Mr. Haff, that Meineke would not be providing a lease guaranty and would

22   not be making the repairs at the premises. (JAF ¶¶34, 37.) Summary judgment should

23   be entered in favor of Counter-defendants on the Third Counterclaim.

24       **2.    Counterclaimants Incorporate All Arguments Presented in
             Section IV.B.2, *supra*.**

25

26       Counterclaimants refer the Court to their arguments and analysis presented

27   under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and

28   unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of

- 33 -

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

the evidence grounds, warranting denial; and (iii) genuine disputes of material fact exists as to Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims.

### D.   Plaintiff's Argument 4:

#### 1.   Summary Judgment Should be Granted on the Fourth Counterclaim for Fraudulent Inducement – 2021 Franchise Agreement.

The Fourth Counterclaim is for fraudulent inducement of the 2021 Franchise Agreement. The claim is based on virtually the identical allegations as the Second Counterclaim for intentional misrepresentation: that Counter-defendants "made material misrepresentations and false assurances that Counterclaimants would have a lease directly with the Landlord for the renewal period. However, upon information and belief, at the time the 2021 franchise agreement was executed, Counter-defendants had no intention in assisting, ensuring, and confirming Counterclaimants obtained a lease for the Franchise Premises for the renewal period." (Counterclaims ¶64.)

For the same reasons as discussed above, CJGL and the Doumas will be unable to meet their burden of persuasion on the Fourth Counterclaim. Ms. Douma testified that Meineke did assist CJGL in obtaining a new lease for the Franchise Premises. (JAF ¶33.) And Meineke did, in fact, offer to guaranty a new lease with the Landlord (JAF ¶42.) Finally, CJGL did, in fact, receive an offer from the Landlord for a new lease of the Franchise Premises, (JAF ¶43, the Doumas rejected that offer. (JAF ¶44.) Thus, the evidence demonstrates that—despite making no representations that it would do so—Meineke did in fact assist CJGL in obtaining a direct lease with the Landlord and CJGL actually received an offer for a lease. CJGL will be unable to meet its burden on the fraudulent inducement claim. Summary judgment should be entered in favor of Counter-defendants on the Fourth Counterclaim.

#### 2.   Counterclaimants Response:

##### a.   Counterclaimants' Incorporate All Arguments Above in Section IV.B.2, *supra.*

Counterclaimants refer the Court to their arguments and analysis presented

- 34 -

under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of the evidence grounds, warranting denial; and (iii) genuine disputes of material fact exists as to Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims.

      b.    <u>Meineke's October 2021 "Offer to Guaranty a New Lease" Does Not Cure or Otherwise Negate Meineke's Fraudulent Inducement of the 2021 Franchise Agreement</u>

Additionally, Meineke's "offer to guaranty a new lease with Landlord" came too little too late, and only <u>after</u> the Landlord withdrew the negotiated direct lease at $7,900 per month for the entire renewal term. By the time Meineke (again) offered to guaranty the lease in October 2021, the Landlord insisted on higher rent and for a shorter term of only three years—five years shy of the renewal term to 2029. Accordingly, any "offer to guaranty a new lease" does not correct or cure Meineke's fraudulent inducement of the 2021 Franchise Agreement.

**E.**    **<u>Plaintiff's Argument 5:</u>**

**1.**    **Summary Judgment Should be Granted on the Fifth Counterclaim for Rescission and Restitution.**

For those same reasons, and additional ones, CJGL will be unable to meet its burden of persuasion on the Fifth Counterclaim for rescission. The Fifth Counterclaim is based on the same set of allegations as the Second and Fourth Counterclaims: "The 2021 Franchise Agreement was purportedly entered into, based on mutual and/or unilateral mistake. The mistake consisted of the understanding as a fact that Counter-defendants would assist, ensure, and confirm Counterclaimants obtained a lease directly with the Landlord for the renewal period." (Counterclaims ¶77.)

CJGL goes on to allege that there was a failure of consideration for entering into the 2021 Franchise Agreement, namely that Meineke failed to ensure that Counterclaimants obtained a lease directly with the Landlord. (*Id.* ¶78.) For the same reasons discussed above, CJGL will be unable to provide evidence to support the claim that the parties entered into the 2021 Franchise Agreement based on a mistake.

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1   Specifically, the evidence shows that what Meineke's representative agreed to do was

2   "do my best to contact the LL [Landlord] and see what it will take to get you a master

3   lease to match our 8 year FTA" (JAF¶ 32)—which he did do.  And there is no genuine

4   dispute that five days prior to the Parties entering into the September 29, 2021 Release

5   (JAF ¶40) and the September 29, 2021 Franchise Agreement (JAF ¶39), Meineke's

6   counsel told CJGL's counsel that (1) Meineke would not make the disputed repairs

7   (JAF ¶35), and (2) would not agree to guarantee any new lease (JAF ¶37).

8   But even if CJGL and the Doumas could show grounds for rescinding the 2021

9   Franchise Agreement, they still would not be able to prevail on their Fifth

10   Counterclaim. In California, a party seeking rescission must "promptly upon

11   discovering the facts which entitle him to rescind" give notice of rescission to the

12   other party and offer to restore the other party's consideration under the contract."

13   Cal. Civ. Code § 1691. As stated in *Neet v. Holmes*, 25 Cal. 2d 447, 154 P.2d 854

14   (1944), "[w]hen the right to rescind exists section 1691 of the Civil Code prescribes

15   the method of procedure which must be followed. Those requirements include a

16   prompt rescission upon discovery of the right to rescind and restoration of everything

17   of value received under the contract." *Id.* at 457 (emphasis added).

18   California courts have interpreted the "promptness" requirement to be a short

19   one, demanding action by the aggrieved party within a month of discovery of the

20   breach unless an adequate explanation for delay is provided. *See Campbell v. Title*

21   *Guar. & Trust Co.*, 121 Cal. App. 374, 377, 9 P.2d 264 (Cal. Ct. App. 1932) (holding

22   that, barring exceptional circumstances, thirty days is time allowed to rescind a

23   contract following discovery of grounds for rescission); *Gedstad v. Ellichman*, 124

24   Cal. App.2d 831, 834, 269 P.2d 661 (Cal. Ct. App. 1954) ("A delay of more than one

25   month in serving notice of rescission requires explanation.").

26   Here, Counterclaimants will not be able to show that they "promptly" gave

27   notice of their alleged right to rescind because the evidence clearly shows that they

28   did not. Instead, CJGL continued to operate the Meineke Center for almost a year,

1    using the Meineke trademarks and Meineke system to collect revenues from
2    customers at the Meineke Center. And even when CJGL abandoned the Franchise
3    Premises, it did not give notice of a right to rescind. The first time CJGL and the
4    Doumas ever purported to assert the right to rescind was when they filed the
5    Counterclaims on March 15, 2023—almost eighteen months after they entered into
6    the 2021 Franchise Agreement they now seek to rescind. The California Supreme
7    Court's opinion in Neet v. Holmes is again instructive. "Waiver of a right to rescind
8    will be presumed against a party who, having full knowledge of the circumstances
9    which would warrant him in rescinding, nevertheless accepts and retains benefits
10   accruing to him under the contract." *Neet v. Holmes*, 25 Cal. 2d at 458.

11        Further, Counterclaimants' delay was prejudicial to Meineke. It is undisputed
12   that CJGL mishandled hazardous substances at the Franchise Premises, which is
13   proven by the Notice of Violation issued to CJGL by the Santa Barbara County
14   Certified Unified Program Agency on October 25, 2022. (JAF ¶¶48, 49.) The delay
15   resulting from this violation prevented Meineke from finding a new franchisee to take
16   over the Meineke Center before it closed. (JAF ¶54.)

17        For these reasons, Counterclaimants will be unable to meet their burden of
18   persuasion on the Fifth Counterclaim and the Court should grant summary judgment
19   in favor of Counter-defendants.

20              **2.    Counterclaimants' Response:**

21                   a.    Counterclaimants' Incorporate Applicable Arguments Above, in
                          Section IV.B.2, *supra.*

22        Counterclaimants refer the Court to their arguments and analysis presented
23   under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and
24   unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of
25   the evidence grounds, warranting denial.

26                   b.    The Fifth Counterclaim for Rescission and Restitution is Timely—
                          Counterclaimants Satisfied Notice Requirements and Undisputed
27                        Evidence Establishes Failure of Consideration

28

Meineke cherry picks from the statute governing rescission to assert that under California law the rescinding party must give notice to effectuate a rescission of an agreement. Meineke ignores the relevant portion of Cal. Civ. Code § 1691, which provides: "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, <u>the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both</u>." Counterclaimants satisfy the notice requirement by pleading in the counterclaim and actively pursuing rescission in this litigation. *See, e.g., Simulados Software, Ltd. v. Photon Infotech Private, Ltd*., 771 F. App'x 732, 734 (9th Cir. 2019) ("To make rescission of the contract effective, California law required [plaintiff] to prove two elements: (1) the contract was obtained through fraud; and (2) [plaintiff] gave [defendant] notice that it was rescinding the contract "promptly upon discovering the facts" underlying Photon's alleged fraud. See Cal. Civ. Code §§ 1689(b)(1), 1691. [Plaintiff] failed to meet the notice requirement, because it never pleaded or otherwise pursued rescission until a post-verdict, court-ordered supplemental brief.") (citing *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1103-04 (9th Cir. 1998); *Doctor v. Lakeridge Constr. Co.*, 252 Cal.App.2d 715 (1967)).

Further, contrary to Meineke's position, undisputed evidence establishes failure of consideration. Failure of consideration occurred <u>after</u> the renewal agreement executed by CJGL on July 12, 2021. The agreement and mutual understanding for renewal of a franchise is that the existing franchisee renewing a franchise agreement and agreeing to an additional, renewal term for a set number of years (here, eight years) is conditioned on the franchisee having a right of possession of the franchise premises for that renewal term. That is what Meineke's form Franchise and Trademark Agreement provides. But CJGL did not have a right of possession for the eight years following renewal and Meineke knew this because it was Meineke that did not exercise its renewal options, allowing the Master Lease to expire. Thus, to effectuate

1    renewal Meineke was to arrange a master lease directly between the landlord and

2    CJGL. That direct lease was part and parcel, and integral to CJGL's renewal of the

3    franchise. Meineke not having arranged the direct lease and instead refusing to provide

4    reasonable assistance to secure the direct lease is a failure of consideration.

5        *Taliaferro v. Davis*, 216 Cal.App.2d 398 (1963) makes clear what matters is

6    that consideration ultimately failed: "The rationale of the cases dealing with failure of

7    consideration is that where the consideration fails in whole or in part through the fault

8    of a party whose duty it is to render it, the other party may invoke such failure as a

9    basis for rescinding or terminating the contract, provided the failure or refusal to

10   perform constitutes a breach in such an essential particular as to justify rescission or

11   termination." *Id.* at 412.

12       Practically, there is no difference in the effect upon the contract between the

13   successful defense of a <u>plea of want or total failure of consideration, and the successful</u>

14   <u>termination of an action to rescind it.</u> … Where the failure of consideration is total, as

15   where nothing of value has been received by the defendant under it and the plaintiff

16   cannot perform it, no notice of rescission is required, but the defendant may plead

17   want or failure of consideration. … Nor, where the failure of the consideration is total-

18   -which implies, of course, that nothing of value has been received under the contract

19   by the party seeking to rescind--is it necessary that a formal rescission be made before

20   bringing suit. In such cases a suit may always be maintained for the recovery of the

21   consideration paid. *Carter v. Fox*, 11 Cal.App. 67, 71-72 (1909). This remains good

22   law and binding.

23       **F.    Plaintiff's Argument 6:**

24          **1.    Summary Judgment Should be Granted on the Sixth
                    Counterclaim for Violation of California Franchise Investment
25                  Law.**

26       The Sixth Counterclaim is for violations of the California Franchise Investment

27   law ("CFIL"). To establish the alleged violation, Counterclaimants rely solely on

28   California Corporations Code section 31201, which provides: "It is unlawful" and a

1  violation of CFIL "for any person to offer or sell a franchise in this state by means of
2  any written or oral communication not enumerated in Section 31200 which includes
3  an untrue statement of a material fact or omits to state a material fact necessary in
4  order to make the statements made, in the light of the circumstances under which they
5  were made, not misleading." (Counterclaim ¶93.)

6  Counterclaimants go on to allege: "Meineke Franchisor and its affiliates,
7  including Counter-defendants, violated § 31201 when they offered and sold a
8  franchise to Counterclaimants by means of oral communications containing untrue
9  statements or omissions of material fact, as alleged in the above and incorporated fact
10 allegations." (Counterclaims ¶94.) Notably, Counterclaimants do not allege any
11 additional acts or omissions to support the counterclaim. Rather, they simply
12 incorporate the preceding allegations in "shotgun" pleading style.

13 As demonstrated above, every "oral communication[] containing untrue
14 statements or omissions of material fact" alleged by Counterclaimants has either been
15 shown to be a true statement, as in Meineke assisting CJGL in its efforts to obtain a
16 new lease, or was a statement or alleged omission that was known to CJGL and the
17 Doumas at the time they signed the Renewal Mutual Release—specifically the alleged
18 statements about making repairs at the Franchise Premises or providing a lease
19 guaranty. The Doumas and CJGL will therefore be unable to meet their burden of
20 persuasion on the Sixth Counterclaim, and summary judgment should be entered in
21 favor of Counter-defendants on that claim.

22 **2.  Counterclaimants' Response:**

23 a.  Counterclaimants' Incorporate Applicable Arguments Above,
24 under IV.B.2, *supra.*

25 Counterclaimants refer the Court to their arguments and analysis presented
26 under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and
27 unenforceable; and (ii) procedurally, Meineke failed to meet and confer on sufficiency
28 of the evidence grounds, warranting denial.

- 40 -
**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1
2

      b.    <u>Counterclaimants' Incorporate Their Argument Below, under Section V.A, *infra*, that Meineke Violated California Franchise Investments Laws by Failing to Make Statutory Written Disclosures</u>

3      Counterclaimants refer the Court to their arguments and analysis presented

4    below in Section V.A, *infra*, that Meineke violated CFIL by materially modifying the

5    franchise agreements without proper written disclosures.

6    **G.**    <u>**Plaintiff's Argument 7:**</u>

7
8

      **1.**    **Summary Judgment Should be Granted on the Seventh Counterclaim for Intentional Interference with Prospective Economic Advantage.**

9      CJGL's Seventh Counterclaim is for intentional interference with prospective

10   economic advantage. CJGL alleges that "Counter-defendants engaged in wrongful

11   conduct that interfered with [customer] relationships including . . .; failing to renew

12   the Master Lease prior to expiration of the initial five-year term . . .; failing to inform

13   Counterclaimants that the Master Lease terminated; making material

14   misrepresentations of assurances that Counterclaimants would obtain a lease from the

15   Landlord for the renewal period; and fraudulently inducing Counterclaimants to renew

16   the franchise agreement without having a lease agreement for the Franchise Premises

17   in place. (Counterclaim ¶107.)

18      CJGL goes on to allege that "[b]y this conduct, Counter-defendants intended to

19   and did disrupt the relationships. Counter-defendants knew disruption of the

20   relationship(s) was certain or substantially certain to occur." (Counterclaim ¶108.) In

21   essence, CJGL asserts that Meineke duped it into renewing the Franchise Agreement,

22   and then immediately sought to intentionally destroy the relationship between CJGL

23   and its prospective customers at the Meineke Center. The claim, on its face, is

24   nonsensical. Meineke makes money only through the fees generated by the very

25   customers CJGL alleges Meineke intentionally ran off.

26      Setting aside the absurdity of the claim, it fails for the same reasons as the other

27   Counterclaims. To prevail, CJGL must prove through admissible evidence that

28   Meineke "knowingly interfered with an economic relationship between the plaintiff

1   and some third party, [which carries] the probability of future economic benefit to the

2   plaintiff." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141-42, 266 Cal.

3   Rptr. 3d 665, 670-71, 470 P.3d 571, 575-76 (2020) (quoting *Korea Supply Co. v.*

4   *Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003) (cleaned up). Further,

5   following the California Supreme Court's opinion in *Della Penna v. Toyota Motor*

6   *Sales*, U.S.A., 11 Cal. 4th 376, 392, 45 Cal. Rptr. 2d 436, 447, 902 P.2d 740, 751

7   (1995), an additional element was added: now, a plaintiff seeking to recover damages

8   for interference with prospective economic advantage must prove that the defendant

9   committed an independently wrongful act." *Ixchel Pharma*, at 1142 (citing *Korea*

10  *Supply* 29 Cal. 4th at 1158). "[A]n act is independently wrongful if it is unlawful, that

11  is, if it is proscribed by some constitutional, statutory, regulatory, common law, or

12  other determinable legal standard." *Id.* (quoting *Korea Supply*, 29 Cal. 4th at 1159).

13          Here, Counterclaimants allege that Meineke and Realty intentionally interfered

14  with prospective customers of Meineke Center # 4118 by:

15          [F]ailing to renew the Master Lease prior to expiration of the initial five-

16          year term, . . . failing to inform Counterclaimants that the Master Lease

17          terminated; making material misrepresentations of assurances that

18          Counterclaimants would obtain a lease from the Landlord for the renewal

19          period; and fraudulently inducing Counterclaimants to renew the

20          franchise agreement without having a lease agreement for the Franchise

21          Premises in place.

22  (Counterclaim ¶107.) All of these issues have been addressed above. Regarding the

23  Master Lease renewal and the alleged failure to inform them of non-renewal, CJGL

24  and the Doumas admit that they knew about the non-renewal in January, 2018, more

25  than three years before they signed the Renewal Mutual Release and more than four

26  years before this action was commenced. Thus, any claims based on the lease non-

27  renewal are barred by the four-year statute of limitations and the Renewal Mutual

28  Release. Further, the alleged "material misrepresentations" that Counterclaimants say

fraudulently induced them to renew the Franchise Agreement were all known to Counterclaimants before they signed the Renewal Mutual Release. (JAF ¶¶31, 35, 37.)

Aside from being wholly implausible, the Seventh Counterclaim is therefore barred, and Meineke is entitled to summary judgment on that claim.

### 2. Counterclaimants Incorporate All Arguments Presented in Section IV.B.2

Counterclaimants refer the Court to their arguments and analysis presented under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of the evidence grounds, warranting denial; and (iii) genuine disputes of material fact exists as to Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims.

### H. Plaintiff's Argument 8:

#### 1. Summary Judgment Should be Granted on the Eighth Counterclaim for Negligent Interference with Prospective Economic Advantage.

In order to prevail on its Eighth Counterclaim for negligent interference with prospective economic advantage, CJGL must provide admissible evidence sufficient to establish (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the defendant's negligence. *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005, 230 Cal. Rptr. 3d 98 (2018).

CJGL alleges no new facts to support this Counterclaim. Rather, it simply incorporates the prior allegations (Counterclaim ¶115), then provides a boilerplate recitation of the legal elements of a claim for negligent interference with prospective economic advantage. (Id. ¶¶116-123.) Thus, for the same reason as discussed above,

1   CJGL will be unable to meet its burden of persuasion on the Eighth Counterclaim
2   because the alleged wrongful actions have either been refuted with incontrovertible
3   evidence, or Meineke has shown that CJGL and the Doumas were aware of the acts
4   or omissions when they entered into the Renewal Mutual Release and more than four
5   years before this action was filed. (JAF ¶¶14, 15, 31, 35, 37.) Counter-defendants are
6   thus entitled to summary judgment on the Eighth Counterclaim.

7
8
        **2.        Counterclaimants Incorporate All Arguments Presented in Section IV.B.2**

9          Counterclaimants refer the Court to their arguments and analysis presented
10   under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and
11   unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of
12   the evidence grounds, warranting denial; and (iii) genuine disputes of material fact
13   exists as to Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims.

14         **I.    <u>Plaintiff's Argument 9:</u>**

15
16
        **1.        Summary Judgment Should be Granted on the Ninth Counterclaim for Unlawful and Fraudulent Business Practices.**

17         CJGL's Ninth Counterclaim for unfair competition is not a standalone claim,
18   but rather is entirely dependent on the claims discussed above. *Majano v. Specialized*
19   *Loan Servicing, LLC*, No. 2:22-cv-07156-ODW (SKx), 2023 U.S. Dist. LEXIS 64615,
20   at *10 (C.D. Cal. Apr. 12, 2023) (citing *Krantz v. BT Visual Images*, L.L.C., 89 Cal.
21   App. 4th 164, 178, 107 Cal. Rptr. 2d 209 (2001), as modified (May 22, 2001) (holding
22   that derivative UCL claims "stand or fall depending on the fate of the antecedent
23   substantive causes of action"). Because all the alleged predicate claims fail, the Ninth
24   Counterclaim also fails. The Court should therefore enter summary judgment in favor
25   of Meineke on the Ninth Counterclaim.

26           **2.        Counterclaimants Incorporate All Arguments Presented in Section IV.B.2**

27         Counterclaimants refer the Court to their arguments and analysis presented
28   under Section IV.B.2, *supra*, specifically (i) the Release is unconscionable and

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1    unenforceable; (ii) procedurally, Meineke failed to meet and confer on sufficiency of

2    the evidence grounds, warranting denial; and (iii) genuine disputes of material fact

3    exists as to Second, Third, Fourth, Seventh, Eighth, and Ninth Counterclaims.

4    **V.    COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM FOR VIOLATIONS OF CALIFORNIA FRANCHISE INVESTMENT LAW**

5

6    **A.    Counterclaimants' Argument: Meineke Violated California Franchise Investment Law by Materially Modifying the Franchise Agreement Without Providing Required Written Disclosures**

7

8    "Franchising is a heavily regulated form of business in California." *Cislaw v.*

9    *Southland Corp.*, 4 Cal.App.4th 1284, 1288 (1992). The California Franchise

10   Investment Law ("CFIL") regulates the offer and sale of franchises, as well as the

11   material modification of existing franchise agreements. Cal. Corp. Code §§ 31110,

12   31125; *see generally* Cal. Corp. Code § 31000 *et seq.* CFIL requires a franchisor to

13   make requisite disclosures to a prospective franchisee with at least 10 days before

14   selling a franchise and execution of the franchise agreement or payment of any fees.

15   Cal. Corp. Code § 31119. This includes disclosure of the conditions under which the

16   franchise could be terminated or renewal refused. Cal. Corp. Code § 31114.

17   The legislative intent behind CFIL is "to provide each prospective franchisee

18   with the information necessary to make an intelligent decision regarding franchises

19   being offered. Further, it is the intent of this law to prohibit the sale of franchises

20   where the sale would lead to fraud or a likelihood that the franchisor's promises would

21   not be fulfilled, and to protect the franchisor and franchisee by providing a better

22   understanding of the relationship between the franchisor and franchisee with regard

23   to their business relationship." Cal. Corp. Code § 31001.

24   Section 31201 prohibits the making of false statements in connection with an

25   "offer" or "sale" of a franchise. Section 31018 defines the terms "sale" and "offer"

26   and limits their applicability to "not include the renewal or extension of an existing

27   franchise where there is no interruption in the operation of the franchised business by

28   the franchisee; <u>provided, that a material modification of an existing franchise, whether</u>

- 45 -

1  upon renewal or otherwise, is a 'sale' within the meaning of this section." Cal. Corp.

2  Code § 31018(c). Thus, a franchisor violates CFIL by making a material modification

3  to the franchise agreement at renewal without proper notice and disclosure.

4      A material modification of an existing franchise is a "sale" under CFIL and

5  requires new disclosure unless it is offered voluntarily <u>and</u> does not substantially

6  impact a franchisee's rights or obligations. Cal. Corp. Code § 31125(d). In other

7  words, material modification occurs if the modification "substantially and adversely

8  impact the franchisee's rights, benefits, privileges, duties, obligations, or

9  responsibilities under the franchise agreement." *Id.* "In the case of a material

10 modification of an existing franchise, the franchisor discloses in writing to each

11 franchisee information concerning the specific sections of the franchise agreement

12 proposed to be modified and such additional information as may be required by rule

13 or order of the commissioner." Cal. Corp. Code § 31101(c)(2).

14     Here, the modification to the existing franchise agreement at renewal

15 substantially impacted CJGL's rights and obligations under both the 2014 and 2021

16 Franchise Agreements as to the renewal term requiring possessory rights of a franchise

17 premises for the renewal period. The modification was unilateral, not voluntarily.

18 Meineke's statements to assist the Doumas and arrange for the direct lease between

19 the landlord and the Doumas were promises in connection with the renewal. But

20 Meineke failed to perform the promises in connection with and/or after the renewal.

21 (JAF ¶¶101-104.)

22     Meineke cannot now contract away liability for its own fraudulent or intentional

23 acts or for negligent violations of statutory law. Cal. Civ. Code § 1668; *see also*

24 *Manderville v. PCG&S Group, Inc.*, 146 Cal.App.4th 1486, 1500 (2007) ( "a party to

25 a contract is precluded … from contracting away [its] liability for fraud or deceit based

26 on intentional misrepresentation."). By materially modifying the agreement at renewal

27 without proper notice and disclosure, Meineke violated CFIL. Meineke's violation

28 was willful, detailed above, allowing CJGL to sue for and obtain rescission of the

1   2021 Franchise Agreement.

2       **B.**    **Plaintiffs' Response**

3           **1.**    **CJGL's Claims Under the CFIL are Barred by the Applicable Statute of Limitations[4]**

4

5   CJGL's existing CFIL claim is for alleged violations of Corporations Code

6   section 31201.  (Counterclaim ¶¶ 93, 94.)  Those alleged violations are enforceable

7   through Corporations Code section 31301.  (*Id.* ¶ 95.)  The limitations period for

8   claims under Corporations Code section 31301 is set forth in Corporations Code

9   section 31304, which provides that actions that actions for violations must be brought

10  "before the expiration of two years after the violation upon which it is based [or]

11  expiration of *one year after the discovery by the plaintiff of the facts constituting*

12  *such violation* . . . whichever shall first expire."  Cal. Corp. Code § 31301. (Emphasis

13  added.)

14  In its Opposition section, CJGL abandons its existing claim and asserts an

15  entirely new claim under Corporations Code sections 31119 and 31101(c)(2) for

16  allegedly "materially modifying the [Franchise] agreement at renewal without proper

17  notice and disclosure."   The Counterclaim makes no mention whatsoever of

18  Corporations Code sections 3119 or 3110, nor does it mention any alleged "material

19  modifications" to the Franchise Agreement.  The newly-raised alleged violations of

20  Corporations Code sections 31110 and 31119 are enforceable through a different

21  Corporations Code section: 31300.  The new claim involves an entirely different

22  violation, i.e., failure to make statutorily required disclosures.  And the newly-raised

23  alleged violations of Sections 31110 and 31119 have a different limitations period,

24  which is "four years after the act or transaction constituting the violation [or] the

25  expiration of *one year after the discovery by the plaintiff of the fact constituting the*

26  *violation* . . . whichever shall first expire.  Cal. Corp. Code § 31303. (Emphasis added.)

27

28  [4] Meineke incorporates by reference its arguments and evidence cited above regarding the Release, which applies equally to CJGL's new CFIL claim.

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**

1    CJGL's attempt to amend its Counterclaim to raise an entirely new claim in
2    response to a summary judgment motion is improper.  *See La Asociacion de*
3    *Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir.
4    2010) ("[The plaintiff] may not effectively amend its Complaint by raising a new
5    theory . . . in its response to a motion for summary judgment."); *Oyarzo v. Turner*,
6    641 F. App'x 700, 702 (9th Cir. 2015) (district court did not err in refusing to consider
7    a claim belatedly raised in response to a motion for summary judgment); *see also*
8    *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (a plaintiff
9    "cannot turn around and surprise the [defendant] at the summary judgment stage" with
10   a new theory of liability).  The Court should therefore decline to consider the new
11   claim.

12       However, even if the Court were to consider the new claim, it (like the existing
13   CFIL claim) is clearly barred by the one-year statute of limitations.  Delayed discovery
14   and tolling rules "do not apply in the case of a [CFIL] claim." *People ex rel. Dep't of*
15   *Corps. v. Speedee Oil Change Sys.*, 95 Cal. App. 4th 709, 724, 116 Cal. Rptr. 2d 497,
16   508 (2002).  The limitations bar is "absolute" [and] "a plaintiff's belated discovery of
17   the fact constituting the violation cannot serve to extend" it.  *Id*. at 727.  Within the
18   limitations period, the one-year "discovery" period "begins to run from the date that
19   a claimant knows of the facts constituting a violation," ***even if a plaintiff is unaware***
20   ***that a violation has occurred***. *Full Tilt Boogie, LLC v. Kep Fortune, LLC*, No. 2:19-
21   cv-09090-ODW (KESx), 2022 U.S. Dist. LEXIS 135419, at *20-21 (C.D. Cal. July
22   29, 2022) (emphasis added) (quoting *United Studios of Self Def., Inc. v. Rinehart*, No.
23   8:18-cv-01048-DOC (DFMx), 2019 U.S. Dist. LEXIS 37993, 2019 WL 1109682, at
24   *6 (C.D. Cal. Feb. 22, 2019).  *See also Powell v. Coffee Beanery, Ltd*., 932 F. Supp.
25   985, 988 (E.D. Mich. 1996) ("the language of [CFIL] § 31303 is clear - the one year
26   period of limitations begins to run from the date that a claimant knows of the facts
27   constituting a violation. This is true even if the claimant is unaware that a violation
28   has actually occurred.).

1   CJGL alleges that the violations occurred by Meineke "materially modifying
2   the [Franchise] agreement at renewal without proper notice and disclosure."
3   Assuming arguendo that the alleged "modification to the existing franchise
4   agreement" actually occurred, CJGL's own allegations state that the violation
5   happened "***at renewal***," which was the date when the 2021 Franchise Agreement was
6   fully executed and effective.  That was September 29, 2021 at the latest.[5]

7   But CJGL did not file its Counterclaim until March 15, 2023.  (Dkt. 20.)  Even
8   if the limitations period related back to the filing of the initial Complaint on January
9   18, 2023, that was more than fifteen (15) months after the violations are alleged to
10  have occurred.   The CFIL Counterclaims are therefore barred by the one-year
11  limitations periods set forth in Corporations Code sections 31303 and 31304.[6]

### 2.   CJGL's Existing CFIL Claim Also Fails on the Merits

13  CJGL's knowledge of the facts giving rise to the alleged CFIL violations not
14  only creates a statute of limitations bar, but also defeats the existing CFIL claim
15  alleged in the Counterclaim for selling a franchise "by means of oral communications
16  containing untrue statements or omissions of material fact, as alleged in the above and
17  incorporated fact allegations."   (Counterclaim ¶ 94.)   The Corporations Code
18  enforcement provision upon which CJGL's claim relies includes an express exception
19  for violations when the facts are known to the plaintiff [counterclaimant in this case].

20  Section 31301, which is the enforcement provision for the alleged violations of
21  Corporations Code sections 31201, provides: "Any person who violates Section 31201
22  shall be liable to any person . . . who, while relying upon such statement shall have
23  purchased a franchise, for damages, ***unless the defendant proves that the plaintiff***
24  ***knew the facts concerning the untruth or omission . . . .***" Cal. Corp. Code § 31301
25  (emphasis added).

---

[5] CJGL contends it renewed even earlier, when Jan Douma signed the 2021 Franchise Agreement on July 12, 2021.
[6] Meineke expressly raised the limitations bar in its Answer to Counterclaim (Dkt. No. 31 at 17 (specifically listing Corporations Code §§ 31303 and 31304.))

1    As demonstrated above, every "oral communication[] containing untrue

2  statements or omissions of material fact" alleged by Counterclaimants has either been

3  shown to be a true statement or was a statement or alleged omission that was known

4  to Counterclaimants at the time they renewed the Franchise Agreement.  Thus, there

5  is no genuine issue of material fact regarding the alleged CFIL violation and CJGL's

6  summary judgment Motion should not only be denied, but judgment should be entered

7  in favor of Meineke on that claim.

8  **VI.    CONCLUSION**

9      **A.    Plaintiff's Motion**

10          **1.    Plaintiff's Conclusion**

11    For each of the Counterclaims asserted by CJGL and the Doumas, the factual

12  assertions of those claims are either contrary to the undisputed evidence or are subject

13  to the applicable statute of limitations and the Renewal Mutual Release signed by the

14  parties. Counterclaimants knew by early 2018 that Meineke had not renewed the

15  Master Lease, and the limitations period for any claim based on that event ran long

16  ago. And prior to the Parties entering into the Release, Meineke told CJGL and the

17  Doumas that the repairs to the facility were the CJGL and the Doumas' responsibility.

18  Meineke also told CJGL and the Doumas that it would not commit to providing a lease

19  guaranty, although it eventually did offer a guaranty in order to help the business

20  succeed. None of the Counterclaims asserted by CJGL and the Doumas can survive

21  in view of the facts. Thus, as a matter of law the Court should grant summary judgment

22  in Meineke's favor as to all Counterclaims.

23          **2.    Defendant's Conclusion**

24    For the foregoing reasons, the Court should deny Meineke's motion for

25  summary judgment in its entirety.

26

27

28

1

**B.** **Counterclaimants' Motion**

2

**1.** **Defendant's Conclusion**

3

For the foregoing reasons, the Court should grant Counterclaimants cross-

4

motion for summary judgment on the CFIL claim.

5

**2.** **Plaintiff's Conclusion**

6

For the foregoing reasons, the Court should deny Counterclaimants' cross-

7

motion for summary judgment in the CFIL claim.

8

9

Dated:  March 13, 2024            ONE LLP
                                  LAWRENCE J. HILTON

10

11

                                  By: */s/ Lawrence J. Hilton*
                                       Lawrence J. Hilton

12

13

                                  Attorneys for Plaintiffs and Counter-Defendants
                                  MEINEKE FRANCHISOR SPV LLC and

14

                                  MEINEKE REALTY, INC.

15

16

Dated: March 13, 2024             LEWITT, HACKMAN, SHAPIRO,
                                  MARSHALL & HARLAN

17

18

                                  By: */s/ Jessica Rosen*
                                       Jessica W. Rosen

19

                                       Heidy Nurinda

20

                                  Attorneys for Defendants and

21

                                  Counterclaimants

22

23

24

25

26

27

28

**JOINT BRIEF RE SUMMARY JUDGMENT MOTION & CROSS-MOTION**