LAWRENCE J. HILTON (SBN 156524)
Email: lhilton@onellp.com
TAYLOR C. FOSS (SBN 253486)
Email: tfoss@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2876
Facsimile:    (949) 258-5081

Attorneys for Plaintiffs and
Counter-Defendants
MEINEKE FRANCHISOR SPV LLC
and MEINEKE REALTY, INC.

JESSICA ROSEN, SBN 294923
jrosen@lewitthackman.com
HEIDY A. NURINDA, SBN 333188
hnurinda@lewitthackman.com
**LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN**
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Telephone:   (818) 990-2120
Fax:             (818) 981-4764

Attorneys for
Defendants/Counterclaimant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MEINEKE FRANCHISOR SPV LLC, a Delaware limited liability company; and MEINEKE REALTY, INC., a North Carolina corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CJGL, INC., a California corporation; CARL DOUMA, an individual; JAN DOUMA, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:23-cv-00374-SPG-JC<br>Hon. Sherilyn Peace Garnett<br><br>**JOINT APPENDIX OF FACTS**<br><br>Date:   April 10, 2024<br>Time: 1:30 p.m.<br>Crtrm: 5C<br><br>Complaint Filed: January 18, 2023<br>Answer/Counterclaim: March 15, 2023<br><br>Trial Date: June 18, 2024 |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| **The Parties** | | | |
| 1. | Meineke Franchisor SPV LLC ("Franchisor") and its affiliates grant franchisees the right to operate automotive maintenance and repair businesses known as "Meineke Car Care Centers." | Pltf's Complaint (ECF No. 1) ¶ 13 and Exh. 2 (ECF No. 1-2) § 1.1; Def's Answer (ECF No. 19) ¶ 13. | Undisputed. |
| 2. | Meineke Realty, Inc. ("Realty" and collectively with Franchisor "Meineke") is an affiliate of Franchisor.  Realty occasionally enters into real estate leases for Meineke Centers and subleases them to franchisees, including the Sublease of the Meineke Center (each as defined below) that is the subject of this action. | CJGL, Inc., Carl Douma, and Jan Douma Counterclaims (hereinafter the "Counterclaims") (ECF No. 20) ¶¶ 10-13. | Undisputed. |
| 3. | CJGL, Inc. ("CJGL") is a dissolved California corporation formed in 2012 and owned by Defendants Jan Douma and Carl Douma (collectively, "the Doumas"). | Rule 30(b)(6) Deposition of CJGL, Inc. ("CJGL Depo.")  at 15:15-16:11. | Undisputed. |
| 4. | The Doumas were the sole shareholders, officers and directors of CJGL. | CJGL Depo. at 15:15-16:11. | Undisputed. |
| 5. | The Doumas both are licensed California attorneys, currently on inactive status. | CJGL Depo. at 14:16-22. | Undisputed. |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 6. | Jan Douma activated her law license between 2019 and 2021 so that she could act as counsel for CJGL in a lawsuit brought by a supplier of CJGL at the Meineke Center. | CJGL Depo. at 14:21-15:8. | Undisputed. |
| **The Initial Franchise and Sublease Documents** | | | |
| 7. | In 2014, CJGL purchased an existing Meineke Car Care Center franchise located at 3956 State Street, Santa Barbara, California 93105 (the "Franchise Premises"). | Counterclaims (ECF No. 20) ¶ 11. | Undisputed. |
| 8. | On August 29, 2014, CJGL and Franchisor entered into a Meineke Franchise and Trademark Agreement for the operation of Meineke Car Care Center #4118 at the Franchise Premises. | Pltf's Complaint (ECF No. 1) ¶ 10; Def's Answer (ECF No. 19) ¶ 10. | Undisputed. |
| 9. | Also on August 29, 2014, CJGL and Meineke Realty, Inc. ("Realty") entered into a Real Property Sublease (the "Sublease") for the Franchise Premises. | Pltf's Complaint (ECF No. 1) ¶ 11 and Exh. 1 (ECF No. 1-1); Def's Answer (ECF No. 19) ¶ 11. | Undisputed. |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 10. | The Sublease attached as an exhibit and incorporated by reference a Lease dated July 1, 2011 between Realty's predecessor, Econo Lube and Tune, Inc. and Maurice and Mary Sourmany, Trustees of the Sourmany 2006 Trust (the "Master Lease"). | Counterclaims (ECF No. 20) ¶ 14; Sublease (ECF No. 1-1) Art. XIII and Exh. A. | Undisputed. |
| 11. | The Sublease provided for termination upon the earlier of (i) expiration on June 29, 2021, or (ii) termination or expiration of the Master Lease. | Sublease (ECF No. 1-1); Counterclaims (ECF No. 20) ¶ 15. | Undisputed. |
| 12. | The Original Term of the Master Lease expired on June 30, 2016, subject to options to extend the lease term for two additional 60-month terms. | Counterclaims (ECF No. 20) ¶ 15; Sublease Exh. A (ECF No. 1-1) § 1.3 and Addendum. | Undisputed. |
| 13. | When the Original Term of the Master Lease expired on June 30, 2016, Realty elected not to exercise its option to extend. | Pltf's Complaint (ECF No. 1) ¶ 17 and Exh. 5 (ECF No. 1-5); Def's Answer (ECF No. 19) ¶ 17. | Undisputed. |
| 14. | The Doumas knew by at least January 18, 2018 that Realty had not exercised its option to renew the Master Lease. | Declaration of Lawrence J. Hilton ("Hilton Decl.") ¶ 2; Exh. 1 (Def's Interrogatory Responses, Interrogatory No. 18.) | Undisputed. |

4

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 15. | Jan Douma stated in an email to Meineke's counsel on September 14, 2018 that Meineke was in breach of the Sublease: "We consider Driven Brands to currently be in breach of their obligations under the sublease, as they have no ability to fulfill the terms of the sublease." | Declaration of Zachary Pfeiffer ("Pfeiffer Decl.") ¶ 2; Exh. A. | Undisputed. |
| 16. | In the same September 14, 2018 email where Jan Douma asserted that Realty's non-renewal of the Master Lease was a breach of the Sublease, she also asserted that: "We are also at risk of expulsion from the property if Driven Brands does not fulfill its obligations under the lease, which to date it has not done, because the identified repairs were never performed when the lease was renewed in 2011." | Pfeiffer Decl. ¶ 2; Exh. A. | Undisputed. |
| 17. | On April 29, 2021, Jan Douma sent an email to Joe Robinson reiterating her position that Meineke was responsible for repairs at the Franchise Premises, stating: | Declaration of Joseph Robinson "Robinson Decl.") ¶ 2; Exh. 1 at CJGL000998. | Undisputed. |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| | "REPAIRS: Meineke needs to finish all repairs as required by the 2011-2016 lease with the landowners, the Sourmanys. The Sourmanys had an inspector come out and make a list of needed repairs. I sent a message to the Sourmanys that Meineke wanted the list, but it is Meineke's responsibility to get the list. I sent in pictures of our flooded parking lot and leaking storage room, so you have some idea where to start." | | |
| 18. | In their Counterclaim, CJGL and the Doumas acknowledge that they were aware of the dispute over repairs at the Franchise Premises before ***they entered into the Renewal Mutual Release on September 29, 2021***. | Def's Counterclaim (ECF No. 20) ¶¶ 21-28. | Disputed in part.<br><br>Defendants and Counterclaimants CJGL, Inc. and Jan Douma executed the Renewal Mutual Release on July 12, 2021. (Douma Decl. ¶16; CJGL/Douma Depo Tr. pp. 35-36, lns.22-25, 1-6; 47-49.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 19. | During CJGL's tenure as a Meineke franchisee, Franchisor offered a program known as "Project Constitution," which allowed qualified franchisees to use certain advertising funds "to enhance the Meineke image" at their Meineke Centers.  The Project Constitution program was set forth in an Advertising Addendum to Franchise and Trademark Agreement entered into by Meineke and CJGL on January 20, 2016. | Declaration of Darrin Krader ("Krader Decl.") ¶ 2; Exh. 1. | Undisputed. |
| 20. | In order to be qualified, Franchisees had to be current on all obligations under the Franchise Agreement. | Krader Decl. ¶ 2; Exh. 1 § 2(b). | Undisputed. |
| 21. | Participation in Project Constitution did not require franchisees to pay any additional fees, as the funds were allocated from the existing fees franchisees already were required to pay to the Meineke Advertising Fund ("MAF") pursuant to their franchise agreements. | Krader Decl. ¶ 2; Exh. 1 § 4(a); Krader Depo. 56:13-24; 58:22-59:20. | Undisputed. |

7

**JOINT APPENDIX OF FACTS**

| **No** | **Fact** | **Supporting Evidence** | **Def's Response** |
|---|---|---|---|
| 22. | Use of Project Constitution funds was limited "solely to improve the image of your Center including replacing and/or upgrading exterior and interior signs and décor." | Krader Decl. ¶ 2; Exh. 1 § 4(b). | Disputed.<br><br>On March 30, 2020, Meineke changed its policy to allow for disbursement of Project Constitution "early release of accrued funds earmarked for Project Constitution," to "support Meineke Franchisees wherever possible" "[d]ue to the swift and unprecedented downtown caused by COVID-19 (coronavirus) and its negative effect on the economy." (Meineke Rule 30(b)(6) Witness-Krader Depo. Tr. 106-108, Ex. 9 [CJGL000476].) |
| 23. | On February 5, 2020, Meineke notified Jan Douma about available Project Constitution funds and the procedures for disbursing those funds. | Krader Decl. ¶ 3; Exh. 2 at CJGL000474 | Undisputed. |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 24. | Also on February 5, 2020, Jan Douma responded to Meineke's email and stated that CJGL had not applied for disbursement of Project Constitution funds "because Meineke has been making repairs required by the land owner. It didn't make sense to plan anything until this was done and signed off." | Krader Decl. ¶ 3; Exh. 2 at CJGL000474 | Undisputed. |
| 25. | On February 28, 2020, Meineke notified CJGL that it was "NOT QUALIFIED" to receive Project Constitution funds. | Krader Decl. ¶ 4; Exh. 3 at MEIN000354 | Disputed in part. Undisputed as to Meineke's notification to CJGL by e-mail. Disputed to the extent Meineke asserts the truth of the matter asserted in that notification, see Fact No. 26, immediately below. |
| 26. | On February 29, 2020 and over the course of the ensuing ten days, Carl Douma communicated with Meineke representatives Darrin Krader and Kevin Harrell disputing Meineke's position that CJGL was not qualified to receive | Krader Decl. ¶¶ 4; Exh. 3 at MEIN000353-54 | Undisputed. |

9

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| | Project Constitution funds. | | |
| 27. | On September 30, 2020, Darrin Krader notified Jan Douma that he would try to get CJGL re-qualified for Project Constitution because CJGL had a payment plan in place to cure its fee defaults. | Krader Decl. ¶ 2; Exh. 1 at MEIN000220 | Undisputed that Meineke's representative, Darrin Krader sent this e-mail. |
| 28. | CJGL was thereafter restored to qualified status for Project Constitution funds. | Hilton Decl. ¶3; Exh. 2 at CJGL000994 | Disputed in part.<br><br>Undisputed that CJGL was qualified to receive Project Constitution funds during the time of the correspondence (April 16-17, 2021).<br><br>Disputed as to the asserted fact, which the cited evidence does not support. (Ex. 2 attached to Hilton Declaration; Counterclaimants' Evidentiary |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| | | | Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |
| 29. | CJGL, however, never followed the procedures for claiming the Project Constitution funds. | Robinson Deposition at 180:9-19. | Disputed.<br><br>The cited evidence does not support the asserted fact. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

11

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| 30. | ***The reason***, according to Jan Douma's April 17, 2021 email, was that CJGL and the Doumas were waiting for Meineke to make the disputed repairs at the Franchise Premises before they would initiate the process of claiming Project Constitution funds. | Hilton Decl. ¶3; Exh. 2 at CJGL000994 | Disputed in part.<br><br>Undisputed that on or around April 17, 2021, Jan Douma stated CJGL was waiting for Meineke to complete "some repairs … before [CJGL] can start PC upgrades."<br><br>Disputed as to the asserted fact of "reason" for allegedly "never follow[ing] the procedures," which the cited evidence does not support. (Ex. 2 attached to Hilton Declaration; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 31. | The Project Constitution issue was ***indisputably*** unresolved at the time of the Renewal Mutual Release, as demonstrated by the allegations in Paragraph 31 of their Counterclaims, "The funds Counterclaimants placed in Project Constitution" belonged to Counterclaimants and was held for Counterclaimants' benefit until they could remodel the Franchise Premises. But Counterdefendants' actions prevented Counterclaimants' use of such funds. Counterclaimants had repeatedly asked for the return of the funds while the Meineke Car Care Center was open. To date, Counterdefendants have not returned all unused funds belonging to Counterclaimants." | Counterclaim (ECF No. 20) ¶ 31. | Disputed.<br><br>Disputed as to "timing" of "entering" the Agreement, including "Mutual Release." Defendants and Counterclaimants CJGL, Inc. and Jan Douma executed the Renewal Mutual Release on July 12, 2021. (Douma Decl. ¶16; CJGL/Douma Depo Tr. pp. 35-36, lns.22-25, 1-6; 47-49.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| | **The Parties Negotiate a Renewal of the Franchise Relationship and Execute a Mutual Release of all Prior Claims** | | |
| 32. | As of mid-2021, the parties were engaged in discussions about renewing the franchise relationship and, on May 11, 2021, Meineke's representative, Joe Robinson, offered to assist the Doumas in efforts to obtain a direct lease with the Landlord, writing to Jan Douma that "I will do my best to contact the LL [Landlord] and see what it will take to get you a master lease to match our 8 year FTA." | Robinson Decl.") ¶ 2; Exh. 1 at CJGL000997. | Undisputed. |

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| 33. | Jan Douma testified as CJGL. Inc.'s corporate designee that Meineke representatives, including Mr. Robinson, did in fact assist CJGL and the Doumas with their efforts to obtain a new lease with the Landlord. | CJGL Depo. at 44:4-10. | Disputed in part.<br><br>Undisputed that Meineke representatives "assisted" in or around May 2021 by Robinson communicating to the Landlord.<br><br>Disputed that Meineke representatives "assisted" CJGL in securing a direct lease *at all relevant times*. Starting in or around June 2021, Meineke actively prevented CJGL and the Doumas from securing the negotiated direct lease by refusing to make the repairs under the Master Lease and guaranty the new lease despite agreeing to initially. (Douma Decl. ¶¶ 11-16, 18-27, Exs. G, H, I, J, K, L, M; Leone Decl. attached Exhibits 2-5.) |

15

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 34. | CJGL and the Doumas engaged outside counsel, Jeffrey Haff, a partner in the law firm of Dady & Gardner, P.A. to represent them in the renewal negotiations. | CJGL Depo. at 46:1-47:9. | Disputed.<br><br>The cited evidence does not support the asserted fact and the Douma Declaration establishes Mr. Haff was retained to handle lease issues. (Douma Decl. ¶21, *see also* ¶¶22-24.) |
| 35. | On September 21, 2021, Meineke's counsel, Dennis Leone, wrote to the Doumas' counsel, Mr. Haff, stating:<br><br>"[I]t, it turns out that your client is also responsible for making repairs to the property and is refusing to do so. Further, your client is arguing that Meineke is responsible for them. As a result, Meineke will require those repairs made, as will the landlord. . . .<br><br>Meineke will support your clients efforts, however, I think your client needs to "right the wrongs" and pay all outstanding amounts and make all repairs as soon as possible." | Declaration of Dennis Leone ("Leone Decl.") ¶ 2; Exh. 1 at MEIN000881. | Disputed in Part.<br><br>Undisputed that the e-mail exists.<br><br>Disputed as inadmissible evidence as presented. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| <u>No</u> | <u>Fact</u> | <u>Supporting Evidence</u> | <u>Def's Response</u> |
|---|---|---|---|
| 36. | On September 24, 2021, Mr. Haff wrote to Mr. Leone inquiring about a lease guaranty: "Will Meineke agree to guaranty this lease as part of keeping this franchisee in business in Santa Barbara at her current location? I need to know that before I can make a formal proposal to Drew Simons on Ms. Douma's behalf." | Leone Decl. ¶ 3; Exh. 2 at MEIN000887. | Undisputed. |
| 37. | Also on September 24, 2021, Dennis Leone responded to Jeff Haff's inquiry about a lease guaranty and states that "Meineke is exiting the business of guaranteeing its franchisees' leases and is no longer agreeing to provide guarantees for them . . . ." | Leone Decl. ¶ 3; Exh. 2 at MEIN000887. | Disputed in Part.<br><br>Undisputed that the e-mail exists.<br><br>Disputed as inadmissible evidence. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 38. | On September 29, 2021, Mr. Haff wrote to the Landlord's attorney Drew Simons and said: "Jan Douma and her company propose that her company remain as the tenant at this property and sign a 7-year lease.  The first year's rent would be $7,900/month and would go up by 2-4% per year, at the landlord's discretion.  She would guaranty the lease. *We have asked Meineke to guaranty the lease, but we have not yet heard back on whether they are willing to do so*." | Leone Decl. ¶ 4; Exh. 3 at MEIN000901 (emphasis added). | Undisputed. |
| | **The Parties Enter into the Renewal Mutual Release and a New Franchise Agreement on *September 29, 2021*** | | |
| 39. | On *September 29, 2021*, CJGL and Franchisor enter into a new Meineke Franchisor SPV LLC Franchise and Trademark Agreement. | CJGL Depo. at 38:2-13; Exh. 4; Pltf's Complaint (ECF No. 1) ¶ 13 and Exh. 2 (ECF No. 1-2); Def's Answer (ECF No. 19) ¶ 13. | Disputed.  Disputed as to "timing" of "entering" the Agreement, including "Mutual Release." Defendants and Counterclaimants CJGL, Inc. and Jan Douma executed the Renewal Mutual Release on July 12, 2021. (Douma Decl. ¶16; CJGL/Douma Depo Tr. pp. 35-36, lns.22-25, 1-6; |

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
|  |  |  | 47-49.) |
| 40. | Also on **September 29, 2021**, CJGL and the Doumas enter into the Renewal Mutual Release with Franchisor and its Affiliates. | CJGL Depo. at 35:7-36:6 and Exh. 3; Pltf's Complaint (ECF No. 1) ¶ 17 and Exh. 5 (ECF No. 1-5); Def's Answer (ECF No. 19) ¶ 17. | Disputed.

Disputed as to "timing" of "entering" the Agreement, including "Mutual Release." Defendants and Counterclaimants CJGL, Inc. and Jan Douma executed the Renewal Mutual Release on July 12, 2021. (Douma Decl. ¶16; CJGL/Douma Depo Tr. pp. 35-36, lns.22-25, 1-6; 47-49.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 41. | The Renewal Mutual Release provides, in pertinent part: "Franchisee [CJGL], its heirs, executors, administrators, successors and assigns, hereby releases Meineke, and its past and present, direct or indirect, parents, subsidiaries, members, affiliates, officers, directors, managers, current and former employees, agents, representatives, successors and assigns of and from any and all rights, duties, responsibilities, claims or causes of action whatsoever, whether in contract or in tort, existing by common law or by statute, known or unknown, heretofore existing between Meineke and Franchisee which may have accrued or which may accrue on account of, arising from, or in any manner growing out of or resulting from the franchise relationship and the Agreement governing that relationship." | CJGL Depo. at 35:7-36:6 and Exh. 3. | Disputed in part as to Meineke's assertion in the subtitle that the "Parties Enter into the Renewal Mutual Release and a New Franchise Agreement on *September 29, 2021*." Defendants and Counterclaimants CJGL, Inc. and Jan Douma executed the Renewal Mutual Release on July 12, 2021. (Douma Decl. ¶16; CJGL/Douma Depo Tr. pp. 35-36, lns.22-25, 1-6; 47-49.) |

20

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| | **Following Renewal, Meineke *Helps* the Doumas Obtain a New Lease Offer from Landlord, but the Doumas Reject the Landlord's Offer** | | |
| 42. | On October 29, 2021, the Doumas' counsel, Mr. Haff, conveyed the Doumas' proposal for a new lease to the Landlord's counsel, Mr. Simons, and confirmed that Meineke was agreeing to provide a 3-month lease guaranty. | Leone Decl. ¶ 5; Exh. 4 at MEIN000769. | Disputed in Part.<br><br>Disputed as to Meineke's assertion in the subtitle that Meineke "Helps" the Doumas Obtain a New Lease Offer, which was less favorable than originally negotiated by CJGL / Jan Douma and as presented is inadmissible. (Douma Decl. ¶27; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 43. | On November 5, 2021, the Landlord, through counsel, rejected the Doumas October 29, 2021 lease proposal and made a counterproposal. | Leone Decl. ¶ 5; Exh. 4 at MEIN000768. | Disputed in Part.<br><br>Disputed as to Meineke's assertion in the subtitle that Meineke "Helps" the Doumas Obtain a New Lease Offer, which was less favorable than originally negotiated by CJGL / Jan Douma and as presented is inadmissible. (Douma Decl. ¶27; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| <u>No</u> | <u>Fact</u> | <u>Supporting Evidence</u> | <u>Def's Response</u> |
|---|---|---|---|
| 44. | On December 7, 2021, the Doumas, through their counsel Mr. Haff, rejected the Landlord's November 5, 2021 lease counterproposal and made another counterproposal for a 10-year lease. | Leone Decl. ¶ 6; Exh. 5 at MEIN000894. | Disputed in Part.<br><br>Disputed as to Meineke's assertion in the subtitle that Meineke "Helps" the Doumas Obtain a New Lease Offer, which was less favorable than originally negotiated by CJGL / Jan Douma and as presented is inadmissible. (Douma Decl. ¶27; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 45. | While the Doumas and CJGL were negotiating (unsuccessfully) with the Landlord over a new lease for the Franchise Premises, Meineke was assisting them in efforts to find an alternate location in Santa Barbara to relocate the Meineke Center. | Krader Depo. 90:11-92:18. | Disputed in Part.<br><br>Disputed as to Meineke's assertion in the subtitle that Meineke "Helps" the Doumas Obtain a New Lease Offer, which was less favorable than originally negotiated by CJGL / Jan Douma and as presented is inadmissible. (Douma Decl. ¶27; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

24

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| | **CJGL *Abandons* the Franchise Premises in August, 2022** | | |
| 46. | On August 6, 2022, without prior notice, CJGL ceased operating the Meineke Center and subsequently vacated the Franchise Premises. | Hilton Decl. ¶ 4; Exh 3 (CJGL's Response to Request for Admission No. 5.) | This fact is ***immaterial*** to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Disputed in part.<br><br>Undisputed that CJGL ceased operations and vacated the Franchise Premises.<br><br>Disputed as to Meineke's assertion in the subtitle that "CJGL ***Abandons*** the Franchise Premises in August, 2022" (Douma Decl. ¶28; Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| 47. | The Sublease required CJGL, upon termination or expiration of the Sublease, to "surrender the Subleased Premises to the Sublessor in good condition, broom clean, ordinary wear and tear excepted." | Complaint Exh. 1 (ECF 1-1) Art. V(E.) | This fact is **_immaterial_** to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Disputed in part.<br><br>Undisputed that the Sublease provision states "surrender the Subleased Premises to the Sublessor in good condition, broom clean, ordinary wear and tear excepted."<br><br>Disputed that CJGL was "required" to surrender the premises per the provision due to (1) Meineke's obligation to complete certain repairs; (2) the Sublease terminated at the time the Master Lease terminated in 2016.<br><br>Supporting Evidence: |

26

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 48. | The condition of the Franchise Premises when CJGL vacated was very poor, and the Landlord provided Meineke with a report of an environmental inspection that revealed significant environmental issues. | Krader Decl. ¶¶ 5, 6; Exhs. 4, 5. | This fact is **immaterial** to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response: <br><br> Disputed in part. <br><br> Undisputed that the Landlord provided Meineke with an environmental inspection report. <br><br> Disputed as to "poor" conditions and that the report "revealed significant environmental issues," evidence as presented is inadmissible. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

| No | Fact | Supporting Evidence | Def's Response |
|----|------|---------------------|----------------|
| 49. | Meineke was further notified that CJGL's shuttering of the business triggered an inspection by the Certified Unified Program Agency (CUPA) – Santa Barbara Office, the agency charged with the local regulatory enforcement of California Health and Safety Code, chapter 6.5 with regulations codified in California Code of Regulations, Title 22. | Krader Decl. ¶ 7; Exh. 6. | This fact is ***immaterial*** to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Disputed, the evidence as presented is inadmissible. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 50. | Meineke was also notified that the CUPA inspection revealed numerous violations of storage and handling of hazardous materials at the Franchise Premises, which required removal in accordance with all hazardous waste removal, disposal and transportation regulations. | Krader Decl. ¶ 8; Exh. 7. | This fact is *immaterial* to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Disputed, the evidence as presented is inadmissible. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |
| 51. | The Landlord remedied the violations identified by CUPA and performed additional environmental testing.  The Landlord than passed those expenses on to Meineke, which paid the Landlord the sum of $117,860 to settle disputes over the condition of the Franchise Premises, including $18,600 for Phase I and Phase II environmental studies.  (Settlement Agreement. | Declaration of Anthony Winchester ¶¶ 2, 3; Exh. 1. | This fact is *immaterial* to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Undisputed that Meineke entered into a Settlement Agreement, |

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| | | | making such payment to Landlord.

Disputed as to CUPA "violations" and claimed associated costs, as improper inadmissible testimony and legal conclusions. Disputed, the evidence as presented is inadmissible. (Counterclaimants' Evidentiary Objections, accompanying the parties' Joint Briefing and separately filed by Counterclaimants.) |
| 52. | In December, 2022, after CJGL vacated the Franchise Premises and ceased operating the Meineke Center, Counterclaimants demanded that Meineke pay the Project Constitution funds that CJGL previously had been eligible to receive. | Counterclaims ¶ 31. | Undisputed. |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 53. | However, by its express terms, Project Constitution funds were available only to franchisees that either were "on a Current Existing Franchise Agreement" or were "actively engaged in the renewal process as determined by Meineke . . . ." | Pltf's Complaint (ECF No. 1) ¶ 15 and Exh. 4 (ECF No. 1-4) at § 2(c); Def's Answer (ECF No. 19) ¶ 15. | Disputed.<br><br>On March 30, 2020, Meineke changed its policy to allow for disbursement of Project Constitution "early release of accrued funds earmarked for Project Constitution," to "support Meineke Franchisees wherever possible" "[d]ue to the swift and unprecedented downtown caused by COVID-19 (Coronavirus) and its negative effect on the economy." (Meineke Rule 30(b)(6) Witness-Krader Depo. Tr. 106-108, Ex. 9 [CJGL000476].) |

31

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 54. | CJGL was not qualified to receive funds when the demand was made, nor would CJGL have been able to use the funds, since they were earmarked solely for improvements to the appearance of the Meineke Center. | Pltf's Complaint (ECF No. 1) ¶ 15 and Exh. 4 (ECF No. 1-4) at § 5; Def's Answer (ECF No. 19) ¶ 15; Krader Depo 52:16-53:2, 57:17-58:4. | Disputed.<br><br>On March 30, 2020, Meineke changed its policy to allow for disbursement of Project Constitution "early release of accrued funds earmarked for Project Constitution," to "support Meineke Franchisees wherever possible" "[d]ue to the swift and unprecedented downtown caused by COVID-19 (Coronavirus) and its negative effect on the economy." (Meineke Rule 30(b)(6) Witness-Krader Depo. Tr. 106-108, Ex. 9 [CJGL000476].) |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Def's Response |
|---|---|---|---|
| 55. | Had Meineke known that CJGL was not going to keep the Meineke Center open, it would actively have sought a replacement franchisee | Robinson Depo. at 72:21-73:15. | This fact is **immaterial** to the issues for summary judgment and therefore does not require a response. Nevertheless, Counterclaimants provide the following response:<br><br>Disputed in part.<br><br>Disputed to the assertion of fact based on speculation and other Meineke Rule 30(b)(6) testimony directly contradicts the ability to replace the franchisee *without a commercial lease*. (Meineke Rule 30(b)(6) Witness-Krader Depo. Tr. 49:1-50:20.) |

///
///
///

33
**JOINT APPENDIX OF FACTS**

**Counterclaimants' Statement of Genuine Disputes of Material Fact**

| <u>No</u> | <u>Fact</u> | <u>Supporting Evidence</u> | <u>Counter-Def's Response</u> |
|---|---|---|---|
| | **The "Renewal Mutual Release" is Unconscionable and Not Enforceable** | | |
| 56. | In contrast to Meineke's stated its plan was to "always get out of [master] leases" after Meineke's parent company Driven Brands purchased Econo Lube in 2006 since Meineke's "business model never included [master] leases," Meineke executed the Master Lease for the Franchise Premises five years *after* in 2011. | Robinson Depo. Tr. 45:1-23 | Undisputed that Meineke executed the Master Lease in 2011 to renewal a lease for the Franchise Premises originally executed in 1989 (see ECF No. 1-1 at 39 [incorporating "[t]he original Real Property Lease . . . between The Sourmany Trustees and Econo Lube and Tune, Inc dated 2-10-89"]. The remainder of the alleged "Fact" is disputed as improper argument and mischaracterizes the 30(b)(6) witness's testimony. |
| 57. | Meineke has a policy to provide franchisees under subleases at least "a one-year notice" of Meineke's intent not to renew a master lease. | Robinson Depo. Tr. 54:7-20 | Undisputed. |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 58. | Meineke did not notify CJGL or the Doumas that Meineke would not exercise its first renewal option prior to the June 30, 2016 expiration of the Master Lease. | Douma Decl. ¶5 | Undisputed. |
| 59. | The Doumas learned of the non-renewal in 2018 *after* the Master Lease expired. | Douma Decl. ¶5 | Undisputed. |
| 60. | From 2018 up to the expiration date of the 2014 Franchise Agreement in June 2021, CJGL continually identified to Meineke its concerns about Meineke's failure to renew the Master Lease and present risk of termination of possession at any time by the landlord. | Douma Decl. ¶6, Exs. D, E, F | Undisputed that CJGL identified to Meineke its concerns about Meineke's failure to renew the Master Lease and present risk of termination of possession at any time by the landlord. |
| 61. | Meineke agents consistently represented to the Doumas that Meineke would approach the landlord to arrange a direct lease with CJGL for the Franchise Premises. CJGL repeatedly asked Meineke for status of transferring the lease to CJGL. | Douma Decl. ¶6, Exs. D, E, F | Disputed in part. Undisputed that Meineke's renewal manager, Joseph Robinson, told Jan Douma that "I will do my best to contact the LL [Landlord] and see what it will take to get you a master lease to match our 8 year FTA." Robinson Decl." ¶ 2; Exh. 1 at |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| | | | CJGL000997. |
| 62. | In early May 2021 Meineke's Renewal Manager, Joseph Robinson assured CJGL and the Doumas that Meineke would obtain a direct lease for the Franchise Premises and that Meineke would sign a guaranty if needed. | Douma Decl. ¶8, Ex. G | Disputed.  The evidence cited by Mrs. Douma does not support the alleged fact. |
| 63. | Meineke's Renewal Manager, Joseph Robinson, confirmed in his e-mail to Mrs. Douma on May 8, 2021, Meineke's assurances:<br><br>"Thank you for taking my call today. As I mentioned, I will do my best to contact the LL and see what it will take to get you a master lease to match our 8 year FTA." | Douma Decl. ¶8, Ex. G | Undisputed. |
| 64. | Based on Meineke's representations assuring CJGL it would secure a master lease for CJGL to match the renewal period, CJGL did not at that time pursue possible legal claims against Meineke and instead made reasonable efforts to enter into a new lease agreement directly with the landlord. | Douma Decl. ¶10 | Disputed that Meineke "assur[ed] CJGL it would secure a master lease for CJGL to match the renewal period." The evidence cited by Mrs. Douma does not support the alleged fact.<br><br>Disputed that |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| | | | CJGL's subjective state of mind is relevant to any issue in the Motion. |
| 65. | On or around June 7, 2021, the Landlord informed Mrs. Douma that Meineke agreed to guaranty the lease. | Douma Decl. ¶11, Ex. H | Undisputed as to what the Landlord's counsel told Mrs. Douma. |
| 66. | Also on or around June 7, 2021, the landlord stated its willingness "to lease to [CJGL] directly as Meineke corporate has agreed to guarantee the lease," and the landlord's intent "to offer her an 8 year lease at current market value which [the landlord was] in the process of determining." | Douma Decl. ¶11, Ex. H | Undisputed as to what the Landlord's counsel told Mrs. Douma. |
| 67. | Meineke did not deny in writing the Landlord's understanding that Meineke agreed to guaranty the lease when responding by e-mail on June 8, 2021. | Douma Decl. ¶11, Ex. H | Disputed in part.<br><br>Undisputed that Mr. Robinson did not respond in writing to Mr. Simons' email.<br><br>Disputed that the decision of whether to issue a corporate guaranty is within the actual or apparent authority of a mid-level Renewal |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| | | | Manager. |
| 68. | On June 28, 2021, Meineke would not grant Ms. Douma's June 25th request for a 30-day extension for renewal to CJGL and the Doumas. | Douma Decl. ¶12, Ex. I | Undisputed. |
| 69. | In the same June 28th correspondence, Meineke, through Mr. Robinson, congratulated CJGL on receiving final approval for renewal with knowledge that CJGL did not have a lease in place of the lease negotiations. | Douma Decl. ¶12, Ex. I | Undisputed. |
| 70. | Meineke knew of CJGL's concerns at signing a new franchise agreement without a direct master lease between CJGL and the Landlord in place. | Douma Decl. ¶13, Ex. I | Undisputed. |
| 71. | On June 30, 2021, the Landlord sent by e-mail the proposed direct lease and addendum for the Franchise Premises to Mrs. Douma (for CJGL) and the guaranty of lease to Mr. Robinson (for Meineke). | Douma Decl. ¶14, Ex. J | Undisputed. |

38

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 72. | Meineke did not respond in writing to the landlord's e-mail denying or otherwise correcting the landlord's continued understanding that Meineke agreed to guaranty the lease. | Douma Decl. ¶14 | Disputed in part.<br><br>Undisputed that Mr. Robinson did not respond in writing to Mr. Simons' email.<br><br>Disputed that the decision of whether to issue a corporate guaranty is within the actual or apparent authority of a mid-level Renewal Manager. |
| 73. | CJGL negotiated the lease to $7,900 rent per month for eight years—substantially less than the $10,300 per month that CJGL had been paying to Meineke under the Sublease--which was approved by CJGL. | Douma Decl. ¶14, Ex. J | Undisputed. |
| 74. | On July 12, 2021, the landlord again sent the guaranty to Meineke, stating "Jan [Douma] is ready to execute the new lease. Is Meineke ready to execute the guaranty and move this process forward? Please advise." | Douma Decl. ¶15, Ex. K | Undisputed. |

39

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 75. | On that same day (July 12, 2021), CJGL executed the renewal agreement to operate the Meineke Car Care Center for an additional eight years, to 2029 (the "2021 Franchise Agreement"), with the understanding that Meineke would execute the guaranty once Mrs. Douma, as authorized agent, signed the renewal agreement and accompanying papers, including the General Release at issue in Meineke's motion for summary judgment. | Douma Decl. ¶16 | Disputed in part. <br><br> Undisputed that Jan Douma executed the 2021 Franchise Agreement and the Release via DocuSign on July 12, 2021. Meineke and Carl Douma (individually and on behalf of CJGL) executed the documents via DocuSign on September 29, 2021. (ECF |
| 76. | Meineke was the drafter of the renewal--the 2021 Franchise Agreement. | Douma Decl. ¶17; Ex. L | Undisputed. |
| 77. | The renewal was presented on a take-it-or-leave-it basis. There was no negotiation and no opportunity for negotiating material terms relating to possession of the Franchise Premises. We were concerned we would lose our franchise business if we did not renew and felt we had no choice but to renew the franchise. | Douma Decl. ¶17 | Disputed. There is no evidence that the Doumas ever attempted to negotiate any terms of the 2021 renewal. <br><br> It is also disputed that the Doumas' subjective state of mind is relevant to any issue in the Motion. |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 78. | CJGL and the Doumas were concerned they would lose their franchise business if they did not renew and felt they had no choice but to renew the franchise despite not yet having a direct lease with the Landlord for the renewal term to 2029. | Douma Decl. ¶17 | Disputed. There is no evidence that the Doumas ever attempted to negotiate any terms of the 2021 renewal.<br><br>It is also disputed that the Doumas' subjective state of mind is relevant to any issue in the Motion. |
| 79. | On August 25, 2021, the Landlord sent to Mr. Robinson as "Director of Real Estate" for Driven Brands, the Landlord's "formal demand" that Meineke's parent company, "Driven Brands as the Lessee" of the Master Lease "make the repairs to the Premises referenced on the list attached hereto." | Douma Decl. ¶18, Ex. M | Disputed in part.<br><br>Undisputed that the Landlord's counsel sent the email attached as Exhibit M, and that Landlord stated it would make the repairs at the premises and charge Driven Brands the cost of the repairs if not made.<br><br>Disputed that Mr. Robinson was "Director or [sic] Real Estate" for Driven Brands or that Driven Brands was the Lessee under the Master Lease. |

41
**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 80. | On or around September 8, 2021, the Landlord withdrew the proposed direct lease with CJGL. | Douma Decl. ¶19 | Undisputed. |
| 81. | CJGL retained Jeffrey Haff of Dady & Gardner, P.A. to represent CJGL in the ongoing issues over possession of the Franchise Premises and Meineke's failure to exercise its option and renew the Master Lease for the term of the initial franchise term and the loss of the second option to renew. | Douma Decl. ¶21 | Undisputed. |
| 82. | Meineke "blew it" by refusing to guarantee the lease. | Douma Decl. ¶22; Ex. 2 to Leone Decl. | Undisputed that on September 24, 2021, the Doumas' counsel, Mr. Haff, told Meineke's counsel that the Landlord's counsel had told Mr. Haff that Meineke "blew it" by refusing to guarantee the lease. |
| 83. | Around late September 2021, Meineke representatives told CJGL that Carl Douma needed to sign the 2021 Franchise Agreement for Meineke to assist in securing the direct lease for the | Douma Decl. ¶23 | Disputed in part.<br><br>Disputed that Meineke ever made the alleged statement to Mr. Douma. |

| No | Fact | Supporting Evidence | Counter-Def's Response |
|----|------|---------------------|------------------------|
| | Franchise Premises. | | Undisputed that Meineke would not have engaged in efforts to secure a lease for premises without a franchisee to occupy the premises. |
| 84. | At and/or around September 29, 2021, Meineke knew CJGL was represented by counsel, but Meineke did not send the 2021 Franchise Agreement and accompanying Release to then counsel, Mr. Haff. | Douma Decl. ¶24 | Undisputed. |
| 85. | Neither Meineke nor its corporate counsel advised CJGL that signing the Release would jeopardize the on-going disputes among the parties now subject to this litigation. | Douma Decl. ¶24 | Undisputed that Meineke did not give the Doumas legal advice regarding the effect of the Release. |
| 86. | CJGL did not understand the significance of the Release and that the Release would cover the instant disputes and legal action since the parties were engaged in discussions over several disputes before, during, and after, the renewal in July and September 2021. | Douma Decl. ¶25 | Disputed but irrelevant. |

43

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 87. | Meineke did not inform CJGL at any time after September 29, 2021, during the ongoing discussions and disputes over the Franchise Premises, that CJGL's disputes and claims were released and/or waived pursuant to the renewal. | Douma Decl. ¶25 | Undisputed that Meineke did not give the Doumas legal advice regarding the effect of the Release. |
| 88. | Meineke raised the purported Release for the first time in this litigation in response to the counterclaims. | Douma Decl. ¶25 | Disputed.  The Release is discussed at length in the Complaint (ECF No. 1 ¶ 17) and is attached as an exhibit thereto (ECF No. 1-5). |
| 89. | By October and November 2021, the Landlord would not revisit the direct lease and terms CJGL previously negotiated, per the June 2021 draft lease, and demanded a higher monthly rental rate than originally negotiated and shortened the term to three years (from the original eight years in line with the renewal term of the franchise). | Douma Decl. ¶27; *see also* Exs. 2 - 5 to Leone Decl. | Undisputed. |
| 90. | The Landlord would not enter a direct lease with CJGL until repairs for the deferred maintenance was completed. | Douma Decl. ¶27 | Undisputed. |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 91. | Once the Landlord began advertising the Franchise Premises for lease, including placing a large sign on the property in June 2022, CJGL could no longer sustain operations. Given the inability to secure a lease for the Premises, we had no other option but to shut down operations and vacate the premises in early August 2022. | Douma Decl. ¶28 | Disputed. Meineke was assisting the Doumas in finding another location in Santa Barbara to move the business. Krader Depo. 90:11-92:18. |
| 92. | In a franchise relationship, it is standard practice in franchising that the franchisor assist a franchisee to remain open for business, including (as one alternative) securing a direct lease for the franchised premises. | Holmes Decl. ¶__, Ex. __. | Disputed pending completion of Mr. Holmes' deposition.<br><br>Disputed that Mr. Holmes' opinions are relevant to any issue in the Motion. |
| 93. | It is also standard custom and practice in the franchise industry to keep a franchisee informed on matters related to the master lease and sublease for the franchised premises, including communications between the franchisor and the landlord. (See Holmes at p.___) | Holmes Decl. ¶__, Ex. __. | Disputed pending completion of Mr. Holmes' deposition.<br><br>Disputed that Mr. Holmes' opinions are relevant to any issue in the Motion. |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| 94. | Meineke's refusal to meaningfully assist CJGL to remain open for business and to keep CJGL informed on all matters relating to the Master Lease and Sublease is inconsistent with franchise industry standards. Meineke's performance fell below standard practice. (See Id. at p.____) | Holmes Decl. ¶__, Ex. __. | Disputed pending completion of Mr. Holmes' deposition.<br><br>Disputed that Mr. Holmes' opinions are relevant to any issue in the Motion. |

### Counterclaimants' Statement of Undisputed Fact in Support of Cross-Motion for Summary Judgment on California Franchise Investment Law Counterclaim

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| **Meineke Modified the Parties' Franchise Agreement** | | | |
| 95. | Meineke modified the Franchise Agreement when it approved the renewal but ignored the renewal term that CJGL "maintain the right to possession of the [existing Meineke Car Care Center] for the term of the successor franchise agreement." (2014 FA § 14.) | Douma Decl. ¶26; *see also* CJGL's Statement of Genuine Disputes of Material Fact ("GF") ¶¶ 67-69 [Douma Decl. ¶12, Ex. I]. | Disputed.  Mrs. Douma's testimony is a legal conclusion, not a fact.<br><br>Disputed that the alleged "fact" is relevant to any issue in the Motion |

**JOINT APPENDIX OF FACTS**

| No | Fact | Supporting Evidence | Counter-Def's Response |
|---|---|---|---|
| | **The Modification is Material Under Cal. Corp. Code § 31101(c)(2).** | | |
| 96. | The modification substantially and adversely impacted CJGL's rights, benefits, obligations, and responsibilities under the 2021 Franchise Agreement. | Douma Decl. ¶28; GF ¶¶ 76-77 [Douma Decl. ¶17], 81, 88 [Douma Decl. ¶¶22, 25]. | Disputed. Mrs. Douma's testimony is a legal conclusion, not a fact.<br><br>Disputed that the alleged "fact" is relevant to any issue in the Motion |
| | **Meineke Did Not Disclose the Material Modification in Compliance with Cal. Corp. Code § 31101(c)(2).** | | |
| 97. | Meineke did not disclose in writing to CJGL information concerning the specific sections of the franchise agreement proposed to be modified at least fourteen days before execution of the 2021 Franchise Agreement. | Douma Decl. ¶26. | Disputed that there was any "modification" to disclose. |
| 98. | Meineke never disclosed in writing to CJGL information concerning the specific sections of the franchise agreement proposed to be modified at any time. | Douma Decl. ¶26. | Disputed that there was any "modification" to disclose. |

/ / /

/ / /

47

**JOINT APPENDIX OF FACTS**

1

Dated:  March 13, 2024

2

3

4

5

6

7

8

Dated: March 13, 2024

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ONE LLP
LAWRENCE J. HILTON

By:  */s/ Lawrence J. Hilton*
      Lawrence J. Hilton

Attorneys for Plaintiffs and Counter-Defendants
MEINEKE FRANCHISOR SPV LLC and
MEINEKE REALTY, INC.

LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN

By: */s/ Jessica Rosen*
     Jessica W. Rosen
     Heidy Nurinda

     Attorneys for Defendants and
     Counterclaimants

**JOINT APPENDIX OF FACTS**